252 N.J. Super. 408 (1991)
599 A.2d 1291
RESOLUTION TRUST CORPORATION, AS RECEIVER FOR CITY SAVINGS, F.S.B., PLAINTIFF-APPELLANT,
v.
SHOREVIEW BUILDERS, INC., A GENERAL PARTNERSHIP IN THE STATE OF NEW JERSEY, AND HUBERT P. SCHREURS AND JOSEPH STRZALKA, INDIVIDUALLY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 22, 1991.
Decided December 17, 1991.
*411 Before Judges MICHELS, HAVEY and CONLEY.
Gregory R. Milne argued the cause for appellant (Cassidy, Foss & San Filippo, attorneys; Gregory R. Milne on the briefs).
Defendants-respondents did not participate in this appeal.
The opinion of the court was delivered by HAVEY, J.A.D.
*412 Plaintiff Resolution Trust Corporation (the RTC), as receiver for City Savings Bank, F.S.B., filed suit in the Law Division against defendants Shoreview Builders, Inc. (Shoreview), Hubert P. Schreurs and Joseph Strzalka, to recover on two promissory notes given by Shoreview to City Federal Savings Bank (City Federal), and guaranteed by the individual defendants. The RTC appeals, by leave granted, from the denial of its motion to dismiss defendants' counterclaim which seeks money damages against the RTC for City Federal's purported unfair dealing and breach of fiduciary duty owed to defendants. The RTC argues that the Law Division had no subject matter jurisdiction over the counterclaim because defendants did not exhaust their administrative remedies provided for under the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA). 12 U.S.C.A. § 1821(d) (West 1989). We agree and reverse.
In November 1987, Shoreview executed and delivered to City Federal two notes in the principal amounts of $385,500 and $2,111,880. In January 1989, City Federal gave Shoreview a line of credit in the amount of $250,000 as evidenced by a third note executed by Shoreview. All three notes were guaranteed by Schreurs and Strzalka.
On December 8, 1989, the Office of Thrift Supervision (OTS) declared City Federal insolvent and appointed the RTC as receiver. The RTC then assigned its right to defendants' notes to City Savings Bank, F.S.B., which was in conservatorship under the RTC. In September 1990, the OTS closed City Savings Bank and appointed the RTC as receiver, and on the same day the RTC assigned the notes to City Savings, F.S.B., a newly-created federal mutual association.
Because defendants had defaulted on the note payments, on November 9, 1990, the RTC, as conservator for City Savings, F.S.B., filed a complaint in the Law Division against defendants to recover the amounts advanced by City Federal to defendants. *413 On January 11, 1991, City Savings, F.S.B. was placed in receivership under the RTC. On March 13, 1991, defendants filed an answer and counterclaim asserting that City Federal and City Savings Bank, F.S.B., as predecessors to City Savings, F.S.B., had breached their obligation to fund fully defendants' building project. Specifically, defendants claimed that City Federal had advanced only $1,950,321.20 on the $2,111,880 note, and the RTC's and its predecessors' refusal to disburse the remaining balance of the loan prevented Shoreview from paying contractors and continuing the sale of residential units. Defendants sought "actual damages, punitive damages, costs of suit, attorney's fees and such other relief as the court may deem just and equitable on this counterclaim." On March 7, 1991, the RTC amended its complaint to reflect that it had been appointed receiver for City Savings, F.S.B. as of January 11, 1991.
The RTC moved to dismiss defendants' counterclaim arguing that the Law Division lacked subject matter jurisdiction, see R. 4:6-2(a), because defendants had failed to comply with the comprehensive federal administrative claims procedure under FIRREA. The trial judge denied the motion, reasoning that defendants' counterclaim was in reality an affirmative defense which was not a "claim" subject to the administrative procedure under FIRREA. In denying the RTC's motion for reconsideration, the judge found it significant that the RTC had in the first instance filed an action in the state court against defendants. As a consequence, the judge reasoned, defendants should not be precluded from raising what he deemed a "defense" in a "collection action" in the state court proceeding.

I
Congress's passage in 1989 of FIRREA was intended to address the recent savings and loan crisis. H.R.Rep. No. 54(I), 101st Cong., 1st Sess., 1, 302-12, reprinted in 1989 2 U.S.C.C.A.N. 86, 98-108. The act provides a detailed regulatory framework so as to "restore the financial integrity of the *414 thrift industry's deposit insurance fund and to `provide funds from public and private sources to deal expeditiously with failed depository institutions.'" Circle Indus. v. City Fed. Sav. Bank, 749 F. Supp. 447, 451 (E.D.N.Y. 1990), (quoting P.L. 101-73, 103 Stat. 183, § 101[8]), aff'd o.b., 931 F.2d 7 (2nd Cir.1991). Thus, the RTC was established "to contain, manage and resolve failed savings associations[,]" acting in a capacity of conservator or receiver of the failed depository institution. Circle Indus., 749 F. Supp. at 451 (quoting § 101[7]); see also 12 U.S.C.A. § 1821(c). The RTC was given authority to determine claims against a failed institution, 12 U.S.C.A. § 1821(d)(3), as well as the power to liquidate the institution's assets in order to pay depositors and other claimants. 12 U.S.C.A. § 1821(d)(2)(E).
FIRREA carefully circumscribes the scope and form of judicial review of the agency's disallowance of a claim asserted against the RTC in its capacity as receiver. The act creates a comprehensive administrative procedure for adjudicating claims asserted against a failed depository institution. As receiver, the RTC initiates the process by giving prompt notice to creditors of the failed institution by advising them they have (at least) 90 days from publication of notice to present their claims against the assets of the institution. 12 U.S.C.A. § 1821(d)(3). The RTC then has 180 days from the date the claim is filed to allow or disallow the claim. 12 U.S.C.A. 1821(d)(5)(A), (B) and (D). If the claim is disallowed, the claimant may either seek administrative review or file suit in the federal district court. 12 U.S.C.A. § 1821(d)(6)(A). The judicial proceeding in the federal district court is a de novo determination of the claim, not a review of the administrative disallowance of the claim. 12 U.S.C.A. § 1821(d)(5)(E). See also Bank of New England, N.A. v. Callahan, 758 F. Supp. 61, 63 (D.N.H. 1991). This claims determination procedure enables the RTC to dispose of the bulk of claims against failed institutions expeditiously and *415 fairly without unduly burdening the judicial process. Circle Indus., 749 F. Supp. at 453.
Section 1821(d)(13)(D) provides that:
Except as otherwise provided in this subsection, no court shall have jurisdiction over 
(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
(ii) any claim relating to any act or omission of such institution or the Corporation as receiver. [Emphasis added.]
Thus, "no court" shall have jurisdiction over "any claim" against the RTC or the failed institution except as provided by FIRREA. That the administrative remedy under the act is exclusive is also apparent from FIRREA's legislative history. The Report of the House Banking, Finance and Urban Affairs Committee reported on FIRREA that a judicial de novo review will be available only "[a]fter exhaustion of streamlined administrative procedures," and the House Judiciary Committee reported that the act provides for judicial involvement in the resolution of claims only as the act "itself provides." Circle Indus., 749 F. Supp. at 453-54.
Further, the federal decisions under the act have uniformly held that Congress intended to vest the RTC with primary jurisdiction to determine a "claim" against a failed institution before judicial intervention. Praxis Properties, Inc. v. Colonial Sav. Bank, S.L.A., 947 F.2d 49 (3rd Cir.1991). Once the RTC has been appointed receiver, a claimant must comply with FIRREA's statutory procedures as a prerequisite to federal jurisdiction. Id.; Rosa v. RTC, 938 F.2d 383, 392-93 (3rd Cir.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991); Circle Indus., 749 F. Supp. at 454. By enacting FIRREA, "Congress expressly withdrew jurisdiction from all courts over any claim to a failed bank's assets that are made outside the procedure set forth in section 1821." Federal Deposit Ins. Corp. v. Shain, Schaffer & Rafanello, 944 F.2d 129, 131 (3rd Cir.1991) (emphasis added); see also Rosa, 938 *416 F.2d at 391. In short, the administrative claims procedure under the act is exclusive. Resolution Trust Corp. v. Elman, 761 F. Supp. 245, 247 (S.D.N.Y. 1991), aff'd, 949 F.2d 624 (2nd Cir.1991).

II
In view of FIRREA's pervasive regulatory scheme, we are satisfied that if defendants' counterclaim is deemed a "claim" under the act, the Law Division had no subject matter jurisdiction to hear and decide it. It is undisputed before us that the RTC published notice pursuant to 12 U.S.C.A. § 1821(d)(3); defendants received actual notice of their obligation to file an administrative claim pursuant to FIRREA, and defendants did not file a claim pursuant to 12 U.S.C.A. § 1821(d)(3)(B)(i). Thus, if defendants are asserting a "claim" covered by FIRREA, their exclusive remedy was to proceed through the act's administrative process and, if the claim was disallowed, to seek a de novo review in the federal district court. 12 U.S.C.A. § 1821(d)(6)(A). Although the federal cases refer to the federal district court's lack of jurisdiction under these circumstances, the preclusion applies to the state courts as well, since 12 U.S.C.A. § 1821(d)(13)(D) provides that "no court shall have jurisdiction over" such claims except as provided under the act. (Emphasis added). Moreover, allowing the prosecution of "claims," whether in federal or state courts, would frustrate the achievement of FIRREA's stated goal to deal expeditiously and fairly with claims against failed savings and loan institutions. See Circle Indus., 749 F. Supp. at 451.

III
The question then becomes whether defendants' counterclaim is a "claim" under FIRREA. We do not agree with the trial judge's observation that the counterclaim was nothing more than a "defense" to the RTC's "collection action." The gravamen of the counterclaim is that as a result of City *417 Federal's and the RTC's failure to disburse the entire $2,111,880 loan given to Shoreview, it was unable to pay contractors and continue sales of their homes, thereby sustaining "numerous and substantial damages." As stated, defendants demand judgment awarding compensatory and punitive damages against the RTC. This affirmative demand for monetary relief cannot be described simply as a "defense."
12 U.S.C.A. § 1821(d)(13)(D)(i) refers to any claim "for payment from" or actions "seeking a determination of rights with respect to, the assets of any depository institution for which [the RTC] has been appointed receiver[.]" (Emphasis added). The emphasis on "assets" plainly suggests that clause (i) is intended to bar actions seeking to recover monetary payment from the assets of the depository institution. See Rosa, 938 F.2d at 393. This is so because any recovery against the institution will be satisfied from its assets garnered by the RTC. Id. Since any compensatory or punitive damage award recovered by defendants against the RTC will of necessity be paid from the assets of the failed institution, it must be deemed a "claim" within the meaning of 12 U.S.C.A. § 1821(d)(13)(D).
Indeed, it has been held that a "lender's liability" action similar to defendants' counterclaim, bottomed on a failed bank's refusal to advance promised funds, constituted a "claim" under FIRREA. In Circle Indus., 749 F. Supp. at 447-455, City Federal and a consortium of banks had provided $158,000,000 in financing for the construction of "Port Liberte," a 1,690 luxury apartment complex in Jersey City. The owner defaulted on the loan. Circle Industries, a subcontractor, alleged that City Federal had promised to provide sufficient funding to complete Phase I of the project and, in reliance on the promise, Circle Industries and other subcontractors completed Phase I. Id. at 450. When the RTC was named receiver for City Federal, Circle Industries filed suit against City Federal and the other banks seeking compensatory and punitive damages, alleging that the defendant banks had breached their covenant to deal *418 fairly and in good faith with Circle Industries and had breached their fiduciary duty to notify Circle Industries that they were unable to provide the financing. Id. at 451. After an exhaustive discussion regarding the provisions and legislative history of FIRREA, the district court concluded that since Circle Industries did not file a claim with the RTC, the court had no subject matter jurisdiction to hear and decide Circle Industries' claim under its amended complaint against City Federal. Id. at 455. The court concluded:
In enacting FIRREA, Congress intended litigants like Circle Industries to first submit their claims against failed savings and loan institutions to the RTC or FDIC before commencing an action in the district court.... "Therefore, this court has no jurisdiction over the claims [for breach of contract, breach of fiduciary duty and fraudulent misrepresentation] raised in plaintiff's complaint." [Id., (quoting Frawley Assocs. v. City Federal Sav. Bank, No. CIV. A. 90-2060, 1990 WL 63546, at *7 (E.D.Pa. May 9, 1990).]

IV
In denying the RTC's motion to dismiss, the trial judge distinguished a direct claim asserted against a failed institution from a claim asserted in response to an action commenced in the state court by the RTC on behalf of the institution. The judge suggested that when a claim is asserted as part of a counterclaim in response to the RTC's suit in a state court, the counterclaim does not fall within FIRREA's reach. However, 12 U.S.C.A. § 1821(d)(13)(D) refers to "any claim or action"; it contains no exceptions for counterclaims. Cf. United States v. Altman, 762 F. Supp. 139, 144 (S.D.Miss. 1991) ("had Congress intended that third-party claims against RTC be exempt from the exhaustion requirement of FIRREA, it would have provided such an exception in the Act as it did in [the Federal Tort Claims Act]"). Furthermore, the federal courts have held that the section applies to counterclaims as well as to direct claims. See id.; Bank of New England, 758 F. Supp. at 64; United Bank of Waco v. First Republic Bank Waco, N.A., 758 F. Supp. 1166, 1168 (W.D.Tex. 1991). Finally, whether the claim is asserted in the first instance against the RTC, or made as a *419 counterclaim in the RTC's suit, if it seeks a monetary recovery from the assets of the failed institution, the underlying purposes of FIRREA are implicated, and thus the claimant must pursue the administrative remedy under the act.[1]

V
Defendants' counterclaim not only seeks money damages, but may fairly be read to include a claim of equitable recoupment. Recoupment is the "right of the defendant, in the same action, to cut down ... plaintiff's demand[.]" Superior Air Products Int'l, Inc. v. Director, Div. of Tax., 9 N.J. Tax 463, 470 (Tax Ct.), (quoting 20 Am.Jur.2d Counterclaim, Recoupment, and Setoff, § 1 at 228 (1965)), aff'd o.b., 10 N.J. Tax 238 (App.Div. 1988). Recoupment is in the nature of a counterclaim against plaintiff's demand for a money judgment and is an efficient procedure for settling all the demands of all of the parties in one suit. Superior Air Products Int'l, Inc., 9 N.J. Tax at 470. Recoupment is distinguishable from setoff in that:
the latter involves an affirmative recovery on a claim that may be independent of the transaction upon which the plaintiff's claim is based. While recoupment may be utilized only to reduce or extinguish the plaintiff's recovery, setoff may be awarded for any amount to which the defendant is entitled. [Beneficial Fin. Co. of Atlantic City v. Swaggerty, 86 N.J. 602, 609, 432 A.2d 512 (1981).]
It may be argued that a claim for a setoff, being an affirmative claim, is barred by FIRREA, but a recoupment is not because it may be "utilized only to reduce or extinguish the plaintiff's recovery[.]" Id. However, the distinction between a setoff and recoupment becomes blurred and of little consequence when the provisions under FIRREA and its underlying purpose are considered. Recoupment clearly is a claim which *420 results in "a determination of rights with respect to, the assets of" the failed institution. 12 U.S.C.A. § 1821(d)(13)(D)(i). Additionally, a recoupment would reduce or extinguish an asset held by the receiver and, as persuasively argued by the RTC, would elevate defendants' claim above other creditors and claimants who have submitted to FIRREA's administrative procedure. We hesitate to apply an equitable principle, such as recoupment, when its application clashes with the orderly and fair administration of the affairs of a failed institution as detailed by the federal statutory scheme. The counterclaim for recoupment must therefore, at least in the context before us, be deemed a "claim" subject to the federal administrative procedure.
Reversed and remanded for the entry of an order dismissing defendants' counterclaim.
NOTES
[1] The RTC's motion to dismiss was addressed only to defendants' counterclaim. It did not seek to strike defendants' affirmative defenses, such as equitable fraud and estoppel. During oral argument before us, counsel for the RTC conceded that FIRREA would not bar such affirmative defenses. In view of that concession, we do not address the issue.