263 N.J. Super. 332 (1993)
622 A.2d 1324
RESOLUTION TRUST CORPORATION, AS RECEIVER FOR CITY SAVINGS, PLAINTIFF-RESPONDENT,
v.
ASSOCIATED GULF CONTRACTORS, INC. AND MOHAMMED MIZANI, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 17, 1993.
Decided March 31, 1993.
*338 Before Judges MICHELS, BILDER and BAIME.
David Elving Schwartz argued the cause for appellant Mohammed Mizani.
Gregory R. Milne argued the cause for respondent Resolution Trust Corporation (Cassidy, Foss & San Filippo, attorneys; Mr. Milne, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Defendants Associated Gulf Contractors, Inc. (Associated Gulf) and Mohammed Mizani (Mizani) appeal from an order of the Law Division denying their motion to vacate a default judgment which had been entered in favor of plaintiff Resolution Trust Corporation (RTC), as receiver for City Savings, in the amount of $1,139,757.97.[1]
Briefly, this action arose from mortgages and promissory notes which had been executed in October of 1987 by Associated Gulf in favor of City Federal Savings Bank, and which had been guaranteed by Mizani. In December of 1989, City Federal Savings Bank was found to be insolvent by the Office of Thrift Supervision (OTS), and the RTC was appointed receiver thereof. In this capacity, the RTC assigned all rights, title and interest in these notes, mortgages and guarantees to City Savings Bank, F.S.B. Shortly thereafter, in September of 1990, the OTS closed City Savings Bank, F.S.B. due to insolvency, and *339 the RTC became the receiver of this institution. The RTC subsequently assigned its rights, title and interest in the aforesaid notes, mortgages and guarantees to City Savings, which was then a newly created federal mutual association. Finally, in January of 1991, the OTS closed City Savings due to its insolvency, and the RTC acquired it as a receiver for the purpose of liquidating its assets. Since Associated Gulf and Mizani had defaulted on their obligations, the RTC, in its position as receiver for City Savings, instituted two separate actions against these defendants; a foreclosure action on the mortgages in the Chancery Division, and this action on the promissory notes in the Law Division.
A default judgment was entered in the Law Division action on September 13, 1991, as a result of defendants' failure to answer, appear or otherwise move with respect to the RTC's complaint. On December 12, 1991, defendants moved to vacate the default judgment. They maintained that there had been no valid service of process effectuated upon them in this matter, and further, that they had valid defenses to the RTC's claims. Judge Arnold in the Law Division denied the motion, basing his decision on Judge Diana's letter opinion in the Chancery Division which had granted the RTC's summary judgment motion in the related mortgage foreclosure action. Judge Arnold adopted Judge Diana's conclusion that defendants had failed to, and were unable to, assert any meritorious defenses to the RTC's claims.
On this appeal, Mizani contends that the trial court erred in failing to vacate the default judgment. Specifically, he maintains that (1) the trial court should not have denied his motion to vacate the default judgment since service of process was defective and, therefore, the trial court lacked personal jurisdiction over him; (2) the reliance by the trial court upon the Chancery Division's decision in the foreclosure action was reversible error and (3) the default judgment should have been vacated as he had meritorious defenses to the RTC's claims. We disagree and affirm.
*340 We are satisfied from our study of the record, and the arguments presented, that the trial court properly exercised its discretion in denying Mizani's motion to vacate the default judgment which had been entered against him. Furthermore, we are convinced that all issues of law raised are clearly without merit. R. 2:11-3(e)(1)(E). Nonetheless, we deem it appropriate to comment with respect to some of Mizani's contentions.
It is well settled that the resolution of a motion to vacate a final judgment is a matter that lies within the sound discretion of the trial court. Hodgson v. Applegate, 31 N.J. 29, 37, 155 A.2d 97 (1959); Shammas v. Shammas, 9 N.J. 321, 328, 88 A.2d 204 (1952); Matter of Adoption of Indian Child, 219 N.J. Super. 28, 42, 529 A.2d 1009 (App.Div. 1987), aff'd, 111 N.J. 155, 543 A.2d 925 (1988); Marder v. Realty Construction Co., 84 N.J. Super. 313, 318, 202 A.2d 175 (App.Div.), aff'd, 43 N.J. 508, 205 A.2d 744 (1964). Moreover, a trial court's decision on such a motion is not to be disturbed unless there has been a clear abuse of its discretion. Greenberg v. Owens, 31 N.J. 402, 405, 157 A.2d 689 (1960); Hodgson v. Applegate, supra, 31 N.J. at 37, 155 A.2d 97; Marder v. Realty Construction Co., supra, 84 N.J. Super. at 318, 202 A.2d 175.
Within the specific context of a default judgment, it has been noted that an application to vacate such a judgment is to be "viewed with great liberality, and every reasonable ground for indulgence is [to be] tolerated to the end that a just result is reached." Marder v. Realty Construction Co., supra, 84 N.J. Super. at 319, 202 A.2d 175. However, even under this rather accommodating standard, it is well settled that a default judgment is not to be set aside unless the defendant seeking such relief can demonstrate that his failure to answer or otherwise appear and defend was somehow excusable, and further, that he has a meritorious defense to either the cause of action or the quantum of damages assessed. Id. at 318, 202 A.2d 175. See O'Connor v. Abraham Altus, 67 N.J. 106, 128-29, *341 335 A.2d 545 (1975); Local 478 v. Baron Holding Corp., 224 N.J. Super. 485, 488-89, 540 A.2d 1307 (App.Div. 1988); Olympic Indus. Park v. P.L., Inc., 208 N.J. Super. 577, 581, 506 A.2d 770 (App.Div.), certif. denied, 104 N.J. 453, 517 A.2d 440 (1986); Bank of New Jersey v. Pulini, 194 N.J. Super. 163, 165-66, 476 A.2d 797 (App.Div. 1984).
With these settled principles firmly intact, we can now consider Mizani's contentions that excusable neglect and meritorious defenses were present in this matter, thus warranting the vacation of the default judgment.

I.
Mizani first contends that his failure to answer, appear or otherwise move as to the RTC's complaint was excusable because service of process was defective. Based on this assertion, Mizani maintains essentially that he was not obligated to respond to the complaint, and that the trial court lacked personal jurisdiction over him. Mizani claims that he was never personally served in the Law Division action, or made aware that it was separate and apart from the related foreclosure action in the Chancery Division. This matter was not specifically addressed by the trial court in its decision denying defendant's motion. However, close examination of it reveals that it is entirely lacking in merit.
Service of process in the civil context is governed by R. 4:4-4. In pertinent part, this rule provides:
Service of summons, writs and complaints shall be made as follows:
(a) Individuals Generally.
(1) Personal Service. Upon an individual other than a minor under 14 years of age or an incompetent person, by delivering a copy of the summons and complaint to the individual personally; or by leaving a copy thereof at the dwelling house or usual place of abode with a competent member of the household of the age of 14 years or over then residing therein. ... [Emphasis added].
Here, Mizani was served with a summons and complaint on two separate occasions. He was personally served on July *342 11, 1991, and previously, he had been served on May 3, 1991, when the relevant papers were left with his resident housekeeper at his usual place of abode. Regarding the July 11, 1991 service, Mizani argues that he was unaware that such service upon him involved the Law Division action. However, he admits, in almost the same breath, that he may have been confused and "thought that the note complaint was an extra copy [of the foreclosure complaint in the Chancery Division] and accidentally discarded it." Clearly, under such circumstances, it cannot be said that Mizani's neglect in failing to respond to the RTC's complaint was excusable. His assertions with regard to the July 11, 1991 service, if believed, merely demonstrate his own laxity and carelessness. There is no question that he was personally served on this date. Indeed, he does not contest this. The claim that Mizani may have mistaken the note complaint for something else is a completely bald assertion, and, in any event, in no way affects the validity of the service which unquestionably took place.
Beyond this, Mizani's contention that the May 3, 1991 service upon him was defective is also without merit. The sheriff's return regarding this service reflects that Mizani was served at his usual place of abode by leaving a copy of the relevant papers with Ms. Carmen Turceos, Mizani's resident housekeeper. Mizani does not contest that such service took place; instead he contends essentially that it was improper to leave the papers with Ms. Turceos.
While the case law in this area is quite sparse, the express terms of the modern version of R. 4:4-4(a)(1) are clearly dispositive. Prior to its amendment in 1971 and 1972, R.R. 4:4-4(a) was the governing rule in this context, and it required service to be made upon a competent member of the "family" in order to be effective. Under that rule, we declined to express an opinion as to whether a housekeeper who was residing in a prospective defendant's household would be considered a member of that person's "family" and thus, a valid recipient of *343 service of process. Ammond v. Lafayette, 63 N.J. Super. 86, 89, 163 A.2d 721 (App.Div. 1960).
However, under the present version of the rule, there can be little question that service upon such a person is valid and permissible. In 1971, R.R. 4:4-4(a) was amended to R. 4:4-4(a), and thereafter, in 1972, the term "household" was substituted for the term "family" therein. Garley v. Waddington, 177 N.J. Super. 173, 180 n. 1, 425 A.2d 1084 (App.Div. 1981). Certainly, the term "household" is less restrictive than the term "family," and, as such, it "more clearly defines the intended scope of the rule." Ibid. See Pressler, Current New Jersey Court Rules, comment 2 on R. 4:4-4 at 764 (1993). Judge Pressler explains that the word "family," which is generally read to mean persons related by blood or marriage, was "clearly more restrictive than the original service rule intended." Pressler, supra, comment 2 on R. 4:4-4 at 764. Thus, the change to the term "household," which is to include all competent persons over fourteen years who make their home with the person to be served, was intended to "eliminate questions as to the validity of service particularly where household units do not follow conventional family patterns." Ibid. See also Garley v. Waddington, supra, 177 N.J. Super. at 180 n. 1, 425 A.2d 1084.
The service here, which was effectuated upon Mizani through Ms. Turceos, constitutes precisely the type of situation that the modern rule was intended to cover. It is not refuted by Mizani that Ms. Turceos was competent, over the age of fourteen, or that she made her home with him at the time she accepted service on his behalf. Therefore, it seems clear that she was, at that time, a member of Mizani's "household" as that term is defined by Garley, supra and Pressler, supra, and consequently, service upon her was entirely valid.
Additionally, it is well settled that "a sheriff's return of service is part of the record and raises a presumption that the facts recited therein are true." Garley v. Waddington, supra, 177 N.J. Super. at 180, 425 A.2d 1084. In the instant *344 matter, the sheriff's return dated May 3, 1991 indicates that service was accomplished by delivering a copy of the pertinent papers to Mizani's resident housekeeper at his usual place of abode. (Emphasis added). While the presumption that these facts are true is a rebuttable one, "it can be rebutted only by clear and convincing evidence that the return is false." Id. at 180-81, 425 A.2d 1084. See Goldfarb v. Roeger, 54 N.J. Super. 85, 89-90, 148 A.2d 189 (App.Div. 1959). Moreover, "uncorroborated testimony of the defendant alone is not sufficient to impeach the return." Goldfarb v. Roeger, supra, 54 N.J. Super. at 90, 148 A.2d 189.
In this regard, Mizani has offered absolutely no evidence to establish that the facts contained in the sheriff's return were false. Instead, he baldly asserts that Ms. Turceos never gave the papers to him, or alluded to them. Thus, it is plain that Mizani has failed to meet his burden of clear and convincing evidence as to the falsity of the sheriff's return. Consequently, accepting the facts contained therein as true, there can be little doubt, for the reasons expressed above, that service of process was properly effectuated upon Mizani on May 3, 1991. In light of this service, and also the valid service which was performed on July 11, 1991, it is beyond question that there was no excusable neglect on Mizani's part which would support the vacation of the default judgment which had been entered against him, and thus, the trial court's failure to vacate that judgment on this basis was entirely proper.

II.
Mizani also claims that the trial court should have vacated the default judgment because he had meritorious defenses to the claims asserted by the RTC. In his proposed form of answer, which was submitted with the motion to vacate the default judgment, Mizani set forth numerous separate defenses, together with a six-count counterclaim. Mizani thereafter conceded that his counterclaim was not cognizable in this action *345 due to our recent opinion in Resolution Trust v. Shoreview Builders, 252 N.J. Super. 408, 599 A.2d 1291 (App.Div. 1991). Therefore, the sole issue which was decided by the trial court, and which is presently before this court, involves the validity of the defenses which were advanced by Mizani. Specifically, those defenses were: (1) failure to state a cause of action; (2) accord and satisfaction; (3) waiver and estoppel; (4) laches and unclean hands; (5) insufficient service of process, and lack of jurisdiction thereby; (6) impossibility of performance due to supervening independent acts; (7) breach of contract on the part of plaintiff and/or its predecessor(s) in interest; (8) the receiver interfered with the parties' contractual obligations; (9) the sums demanded are not owed as the monies allegedly paid out by the plaintiff were never actually given to the defendants; (10) the sums demanded are not owed in full, as the monies allegedly paid out by the plaintiff were never given in full to the defendants; (11) anticipatory breach and repudiation; (12) any and all other defenses required to be specifically pled by R. 4:6-2.
The trial court denied defendant's motion based on a finding that none of the defenses advanced by Mizani were meritorious. The trial court grounded its decision entirely upon Judge Diana's opinion in the Chancery Division which had granted summary judgment in the related foreclosure action. Judge Diana, in turn, had based his decision in large part on the federal "holder in due course" doctrine, as well as our opinion in Resolution Trust, supra.
Resolution Trust, supra, provides an excellent overview of the act under which the RTC was pursuing its claims; namely, the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA). A review of FIRREA's purpose and procedures is particularly helpful in understanding and evaluating claims made under it, and the limited role that courts are intended to play in such a context.
In Resolution Trust, supra, we explained:

*346 Congress's passage in 1989 of FIRREA was intended to address the recent savings and loan crisis. H.R.Rep. No. 54(I), 101st Cong., 1st Sess., 1, 302-12, reprinted in 1989 2 U.S.C.C.A.N. 86, 98-108. The act provides a detailed regulatory framework so as to "restore the financial integrity of the thrift industry's deposit insurance fund and to `provide funds from public and private sources to deal expeditiously with failed depository institutions.'" Circle Indus. v. City Fed. Sav. Bank, 749 F. Supp. 447, 451 (E.D.N.Y. 1990), (quoting P.L. 101-73, 103 Stat. 183, § 101[8]), aff'd o.b., 931 F.2d 7 (2nd Cir.1991). Thus, the RTC was established "to contain, manage and resolve failed savings associations[,]" acting in a capacity of conservator or receiver of the failed depository institution. Circle Indus., 749 F. Supp. at 451 (quoting § 101[7]); see also 12 U.S.C.A. § 1821(c). The RTC was given authority to determine claims against a failed institution, 12 U.S.C.A. § 1821(d)(3), as well as the power to liquidate the institution's assets in order to pay depositors and other claimants. 12 U.S.C.A. § 1821(d)(2)(E). [252 N.J. Super. at 413-14, 599 A.2d 1291].
We further stressed that "[t]he act creates a comprehensive administrative procedure for adjudicating claims asserted against a failed depository institution." Id. at 414, 599 A.2d 1291 (Emphasis added). It then noted that the prescribed "claims determination procedure enables the RTC to dispose of the bulk of claims against failed institutions expeditiously and fairly without unduly burdening the judicial process." Id. at 414-15, 599 A.2d 1291. Consequently, "the administrative remedy under the act [was intended to be] exclusive," and thus, "[o]nce the RTC has been appointed receiver, a claimant must comply with FIRREA's statutory procedures as a prerequisite to federal [de novo] jurisdiction." Id. at 415, 599 A.2d 1291.
It was against this backdrop that Judge Diana came to evaluate the validity of the proposed defenses which had been advanced by Mizani. Judge Diana decided, as a matter of federal law, that the majority of the defenses set forth by Mizani were "personal" in nature and thus, were barred by the federal "holder in due course" doctrine. The defenses which were not deemed to be "personal" by Judge Diana, those alleging breach of contract and seeking to reduce the RTC's ultimate recovery, were determined by him to actually be "claims" which were barred from being heard in our courts by both federal and state law. Consequently, Judge Diana concluded *347 that no meritorious defenses existed to require the vacation of the concerned default judgment. We agree.
There can be little doubt that the RTC[2] enjoys "holder in due course" status when it acquires a promissory note through a purchase and assumption transaction involving an insolvent bank. Campbell Leasing, Inc. v. F.D.I.C., 901 F.2d 1244, 1248 (5th Cir.1990). See F.D.I.C. v. Wood, 758 F.2d 156, 161 (6th Cir.), cert. denied, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985); F.D.I.C. v. Hatmaker, 756 F.2d 34, 38 n. 5 (6th Cir.1985). Gunter v. Hutcheson, 674 F.2d 862, 873 (11th Cir.), cert. denied, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). Moreover, as a "holder in due course," it is deemed to be an innocent party with respect to the note, and thus, takes it free of all "personal" defenses. F.D.I.C. v. Wood, supra, 758 F.2d at 160. The reasoning behind this doctrine, in the words of the Wood Court, is that "`[p]ersonal' defenses ... are not truly defenses against the note itself, but rather are defenses or claims stemming from the underlying transaction." Ibid. While such defenses are allowed when the original wrongdoer tries to collect on the note, a "holder in due course," being an innocent party, is not to be subjected to them. Ibid. Beyond this, the RTC is afforded "holder in due course" status under such circumstances, as a matter of federal common law, in order to effectively perform its congressionally mandated function. Campbell Leasing, Inc., supra, 901 F.2d at 1248-49.
In this matter, the RTC clearly qualifies for "holder in due course" status. Both City Savings and City Savings Bank, F.S.B. before it, had obtained the concerned notes, mortgages and guarantees through purchase and assumption agreements. Thereafter, City Savings was placed in receivership with the RTC. Thus, the RTC, as receiver, was entitled to, and did, take *348 the notes, mortgages and guarantees free of all "personal" defenses which may have been applicable thereto.
With respect to what constitutes a "personal" defense, Judge Diana's thorough review of the federal doctrine in this area is especially helpful. Specifically, Judge Diana, in his letter opinion on the RTC's summary judgment motion in the related foreclosure action, assimilated the following sampling of "personal" defenses:
Under the doctrine of federal holder in due course, the RTC is not subject to these personal defenses. See FDIC v. Wood, 758 F.2d 156, 161 (6th Cir.), cert. denied 474 U.S. 944 [106 S.Ct. 308, 88 L.Ed.2d 286] (1985) (personal defenses such as failure of consideration and usury not available against FDIC); FDIC v. Gulf Life Ins. Co., 737 F.2d 1513, 1517 (11th Cir.1984) (waiver, estoppel and unjust enrichment defense not available against FDIC); Gunter, 674 F.2d at 869 (fraud defense not available against FDIC); Campbell Leasing Inc. v. FDIC, 901 F.2d 1244 (5th Cir.1990) (tortious interference with contract and intentional infliction of mental and emotional distress defenses not available against FDIC); FDIC v. Rockelman, 460 F. Supp. 999, 1003 (E.D.Wis. 1978) (fraud in the inducement defense is not available against FDIC); FDIC v. First Mortgage Investors, 485 F. Supp. 445 (E.D.Wis. 1980) (waiver, breach of duty of good faith, estoppel and wrongful setoff defenses are not available against FDIC); Sunbelt Savings F.S.B. v. Cashin Construction Co., Inc., 737 F. Supp. 41 (E.D.Tex. 1990) (failure of consideration; accord and satisfaction; release; estoppel; laches; waiver' breach of fiduciary duty; and common law fraud and misrepresentation defenses not available against FSCIC).
Thus, it is clear that the vast majority of Mizani's proposed separate defenses cannot be asserted against the RTC, as they fall within the category of "personal" defenses. Additionally, Mizani's separate defense of improper service of process, which was not specifically addressed by the trial court, is clearly without merit for the reasons expressed previously.
Turning now to the remainder of Mizani's proposed defenses, those alleging breach of contract and seeking to reduce the RTC's ultimate recovery, it is clear that these purported defenses actually fall within the broad category of "claims" which are barred from being heard in our courts by the express terms of FIRREA, and our holding in Resolution Trust, supra. 12 U.S.C.A. § 1821(d)(13)(D); 252 N.J. Super. at *349 419-20, 599 A.2d 1291. In this regard, the relevant portion of FIRREA states:
Except as otherwise provided in this subsection, no court shall have jurisdiction over 
(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
(ii) any claim relating to any act or omission of such institution or the Corporation as receiver. [12 U.S.C.A. § 1821(d)(13)(D) (emphasis added)].
In construing the term "claim" in Resolution Trust, we afforded it, as other courts have also done, a broad meaning in order to give effect to the salutary goals of FIRREA. 252 N.J. Super. at 419-20, 599 A.2d 1291. Thus, we read "claim" to include not only an affirmative action, but also a counterclaim, a setoff action and a recoupment action, as all of these would clearly result in "`a determination of rights with respect to[] the assets of' [a] failed [depository] institution." Ibid.
Applying this interpretation of the term "claim" to the matter at hand, it is apparent that this term is broad enough to encompass Mizani's purported defenses which allege breach of contract and seek to diminish the amount of the RTC's recovery on the defaulted on notes. While here defendant's "claims" were masked as defenses instead of counterclaims, the underlying rationale which compels the conclusion that they are not cognizable in our trial courts remains the same. Specifically, Mizani's success on any of these allegations would serve to "reduce or extinguish an asset held by the receiver," and, in essence, "elevate [his "claim"] above other creditors and claimants who have submitted to FIRREA's administrative procedure." Resolution Trust, supra, 252 N.J. Super. at 420, 599 A.2d 1291. In Resolution Trust, we were unwilling to permit such a result. We remain so. Thus, we emphasize once again that our trial courts should not hear anything which would serve to undermine "the orderly and fair administration of the affairs of a failed [depository] institution as detailed by the federal statutory scheme." Ibid.
*350 Consequently, we are in complete agreement with Judge Diana's determination that Mizani's proposed defenses concerning breach of contract and related matters were actually "claims." Clearly, such allegations were of the sort which would result in "a determination of rights with respect to[] the assets of [a] depository institution for which the [RTC] has been appointed receiver." 12 U.S.C.A. § 1821(d)(13)(D)(i). As such, they were barred from being heard in the trial court by both federal statute and state decisional law. Ibid. See Resolution Trust, supra, 252 N.J. Super. at 419-20, 599 A.2d 1291.
Therefore, the trial court correctly held that Mizani had failed to advance any meritorious defenses below which would have required the vacation of the default judgment that had been entered against him. The trial court's determination, through its adoption of Judge Diana's opinion, that Mizani's proposed defenses were barred by the federal "holder in due course" doctrine, the express terms of FIRREA and our decision in Resolution Trust was legally sound, and thus, is unassailable. While Mizani finds this conclusion objectionable, and even asserts that the federal "holder in due course" doctrine and the concerned provisions of FIRREA are unconstitutional, it is quite clear, as Judge Diana aptly noted, that Mizani was not left without recourse concerning his "claims." He simply declined to follow the mandated administrative procedure, despite being repeatedly made aware of it.

III.
Mizani's final contention is that the applicable provisions of FIRREA and the "holder in due course" doctrine were unconstitutionally applied to him, and served to deny him due process. Specifically, Mizani asserts that the pertinent section of FIRREA, 12 U.S.C.A. § 1821(d)(13)(D), "effectively ... creates the Resolution Trust Corporation into a [f]ederal holder in due course and effectively converts all its claims ... into what are basically judgments by confession." Mizani finds this objectionable *351 because he claims that it "means that the RTC can bring an action against an alleged debtor and that any `determination of rights' by that debtor-defendant cannot be considered by the court."
While the provisions of FIRREA are admittedly somewhat rigid, there can be little doubt that the laudable goals of this act form a rational basis for the existence of this statute. See e.g., Resolution Trust, supra, 252 N.J. Super. at 413-14, 599 A.2d 1291 (indicating that the primary purposes for the passage of FIRREA were to "address the recent savings and loan crisis," and to "restore the financial integrity of the thrift industry's deposit insurance fund"). See also F.S.L.I.C. v. Murray, 853 F.2d 1251, 1256 (5th Cir.1988) (acknowledging that the rescue of insolvent savings and loans implicates "sensitive federal interests," one of which is "promoting confidence and stability in financial institutions"). More specifically, the FIRREA claims procedure has been recently challenged in federal court upon due process grounds, and it has been upheld. Rosa v. Resolution Trust Corp., 938 F.2d 383, 396-97 (3rd Cir.), cert. denied, ___ U.S. ___, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991). Certainly, this court is bound by that federal court's resolution of this matter of federal law.
Even if we were not so bound, we would be in complete agreement with the Federal Circuit Court's determination that the FIRREA procedure does not violate a defendant's due process rights. Moreover, it certainly did not do so in this particular case. A defendant with "claims" against a failed depository institution is in no way precluded from pursuing them. However, in order to further the salutary goals of FIRREA, a claimant is subjected to a "comprehensive administrative procedure." Resolution Trust, supra, 252 N.J. Super. at 414, 599 A.2d 1291. This procedure, along with the reasons therefor, was succinctly set forth in Resolution Trust, supra as follows:

*352 FIRREA carefully circumscribes the scope and form of judicial review of the agency's disallowance of a claim asserted against the RTC in its capacity as receiver. The act creates a comprehensive administrative procedure for adjudicating claims asserted against a failed depository institution. As receiver, the RTC initiates the process by giving prompt notice to creditors of the failed institution by advising them they have (at least) 90 days from publication of notice to present their claims against the assets of the institution. 12 U.S.C.A. § 1821(d)(3). The RTC then has 180 days from the date the claim is filed to allow or disallow the claim. 12 U.S.C.A. 1821(d)(5)(A), (B) and (D). If the claim is disallowed, the claimant may either seek administrative review or file suit in the federal district court. 12 U.S.C.A. § 1821(d)(6)(A). The judicial proceeding in the federal district court is a de novo determination of the claim, not a review of the administrative disallowance of the claim. 12 U.S.C.A. § 1821(d)(5)(E). See also Bank of New England, N.A. v. Callahan, 758 F. Supp. 61, 63 (D.N.H. 1991). This claims determination procedure enables the RTC to dispose of the bulk of claims against failed institutions expeditiously and fairly without unduly burdening the judicial process. Circle Indus., 749 F. Supp. at 453. [252 N.J. Super. at 414-15, 599 A.2d 1291].
There can be little doubt that this procedure is mandatory and exclusive. See F.D.I.C. v. Shain, Schaffer & Rafanello, 944 F.2d 129, 132 (3rd Cir.1991); Resolution Trust, supra, 252 N.J. Super. at 415-16, 599 A.2d 1291. Thus, "[o]nce the RTC has been appointed receiver, a claimant must comply with FIRREA's statutory procedures as a prerequisite to federal [de novo] jurisdiction." Resolution Trust, supra, 252 N.J. Super. at 415, 599 A.2d 1291. Consequently, a party, such as Mizani here, is not foreclosed from obtaining judicial review of his "claims" against the RTC, but he must first exhaust the applicable administrative procedures. Ibid. Only then is a claimant entitled to a de novo determination of his "claims" in federal district court. Ibid.
Here, Mizani was repeatedly made aware by plaintiff's counsel, throughout the duration of the lower court proceedings, that the proper forum for his "claims" was not the state court, but instead before the RTC. Despite this notice, Mizani refused to assert his "claims" in the appropriate forum, apparently gambling that he would be successful in getting them heard by the trial court. Thus, defendant's failure to have his "claims" heard in no way amounts to a denial of due process. *353 Instead, it can be attributed entirely to his own disregard for mandated procedure.
Accordingly, the order under review is affirmed.
NOTES
[1] During the pendency of this appeal, defendant Associated Gulf Contractors, Inc. filed a petition for bankruptcy with the Federal Bankruptcy Court, and, therefore, the appeal was automatically stayed as to the corporate defendant. Thus, the appeal proceeded solely with respect to defendant Mohammed Mizani.
[2] While the cited case law refers to the F.D.I.C., it is quite clear that the RTC is to enjoy the same powers and rights as the F.D.I.C. when acting as a conservator or receiver for a failed depository institution. 12 U.S.C.A. § 1441a(b)(4)(A).