**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1415-17T2

PCIREO-1, LLC,

      Plaintiff-Respondent,

v.

479 GEORGIA TAVERN
ROAD, LLC,

      Defendant-Appellant,

and

JERSEY MORTGAGE COMPANY,
n/k/a PNC BANK, N.A.,

      Defendant.

_____

        Submitted January 14, 2019 – Decided February 28, 2019

        Judges Fasciale and Gooden Brown.

        On appeal from Superior Court of New Jersey, Chancery Division, Monmouth County, Docket No. F-045324-13.

        Elaine M. Diamantides, attorney for appellant.

Gary C. Zeitz, LLC, attorneys for respondent (Linda S. Fossi, on the brief).

PER CURIAM

In this tax sale foreclosure action, defendant 479 Georgia Tavern Road, LLC, appeals from an October 13, 2017 Chancery Division order, denying its motion to vacate the default judgment and invalidate the final judgment of foreclosure. We affirm.

Defendant was the record owner of the subject property, 479 Georgia Tavern Road in Howell Township. Sanders DeLeon had resided at the property with his former girlfriend, and his mother, who was the prior owner and had transferred ownership of the property to defendant prior to her death in 2008. DeLeon was designated as defendant's sole managing member and authorized agent.

On May 26, 2011, plaintiff's predecessor in interest, U.S. Bank for Pro Capital I, LLC (Pro Capital), paid $3815.13 in principal and a $3100 premium to purchase tax sale certificate number 20110157 from Howell Township for unpaid property taxes assessed against the property.[1] Pro Capital recorded the

---

[1] The Tax Sale Law, N.J.S.A. 54:5-1 to -137, provides a mechanism for individuals or entities to purchase tax liens from municipalities and initiate foreclosure actions against property owners who are delinquent in paying their

certificate with the Monmouth County Clerk on July 27, 2011. On December 5, 2013, Pro Capital filed a foreclosure complaint against defendant and Jersey Mortgage Company,[2] seeking to foreclose on the tax sale certificate. The affidavit of service certified that the process server "successfully" served the summons and complaint on DeLeon, defendant's authorized agent, at the subject property on December 15, 2013, at 2:05 p.m. The affidavit described DeLeon as a white male with grey hair, over six feet tall, and between the ages of fifty-one and sixty-five.

---

property taxes. The foreclosure process begins when a property owner fails to pay the property taxes, as the unpaid balance becomes a municipal lien on the property. N.J.S.A. 54:5-6. "When unpaid taxes or any municipal lien . . . remains in arrears on the [eleventh] day of the eleventh month in the fiscal year when the taxes or lien became in arrears, the collector . . . shall enforce the lien by selling the property[.]" N.J.S.A. 54:5-19. Upon completion of the sale, a certificate of tax sale is issued to the purchaser. N.J.S.A. 54:5-46.

[2] A tax foreclosure sale is subject to redemption. N.J.S.A. 54:5-32. If the certificate is not redeemed within two years from the date of the tax sale, the certificate holder can file an in personam foreclosure action to bar the right of redemption. N.J.S.A. 54:5-86(a). Prior thereto, the certificate holder must, through a "title search of the public record[,]" identify "any lienholder or other persons and entities with an interest in the property that is subject to foreclosure[,]" who then must be named as defendants in the action and served with the foreclosure complaint. R. 4:64-1(a). Jersey Mortgage Company was joined as a defendant based on a mortgage executed by defendant on May 7, 1971, in the principal amount of $1209.96.

A-1415-17T2

Thereafter, defendant failed to plead or otherwise defend the action. See R. 4:64-1(c). On May 14, 2015, the trial court entered an order setting the redemption amount at $26,411.16, costs in the amount of $1165.91, and June 29, 2015, as the last day to redeem. See R. 4:64-1(f). On May 21, 2015, the order was served upon defendant at the subject property, by regular and certified mail, return receipt requested. On August 12, 2015, Pro Capital assigned the tax sale certificate to plaintiff, and, on August 14, 2015, moved to substitute plaintiff, serving the motion on defendant by regular and certified mail. The motion was subsequently granted.

On November 2, 2015, plaintiff moved for final judgment, and served defendant at the property by regular and certified mail. On March 11, 2016, the court entered a final judgment of foreclosure against defendant, which was served upon defendant on March 14, 2016. On March 24, 2016, a writ of possession was issued, but plaintiff's counsel at the time, Jacob Rosner, Esq., did not schedule a removal. On the same date, Frank Fischer, Esq., sent a letter to Rosner, indicating that he was representing DeLeon and confirming that he had received a copy of the final judgment. In the letter, Fischer asked Rosner

to "contact [him] to discuss whether or not [plaintiff] would consider allowing [defendant] to purchase the tax sale judgment" and under "what . . . terms."[3]

On March 28, 2017, plaintiff filed a substitution of attorney, replacing Rosner with Gary Zeitz, Esq. On April 10, 2017, Zeitz obtained a second writ of possession, and notified defendant by letter dated July 21, 2017, of an August 30, 2017 removal date. On August 29, 2017, defendant filed an emergent motion to stay the removal and afford it the opportunity to move to vacate the final judgment, which the court granted. As a result, the court issued an order to stay DeLeon's removal until November 1, 2017, and extending the writ of possession to December 31, 2017.

On August 29, 2017, defendant also moved to vacate the final judgment. In his supporting certification, DeLeon claimed he was unaware that he was delinquent on his property taxes because he gave the money for bills to his former girlfriend, Karen Wells, who had been living with him for fifteen years and "helped [him] by paying bills and going through [his] mail." He also denied knowing "about the tax sale, or the subsequent final judgment of foreclosure,"

---

[3] Previously, on October 5, 2015, Fischer had sent a letter to the Howell Township Tax Assessor's Office, informing them that his law firm was representing DeLeon, and requesting "a copy of all taxes due on [the subject] property" so that it could "be brought up to date."

because "[he] was never personally served with the [c]omplaint and [s]ummons[,]" and he was the only person authorized to "accept service" on defendant's behalf. According to DeLeon, "although the affidavit of service . . . [said] that [he] was personally served," he disputed the physical description contained therein and denied having "grey hair."

DeLeon also attached notices he had received from the Howell Township Tax Collector, dated July 30, 2015, January 6 and June 23, 2017, advising him of the redemption amount and due date, as well as the procedure for paying off the lien on the property. The latest letter, dated June 23, 2017, listed the final date for redemption as July 31, 2017. Thus, according to DeLeon, based on the notices and conversations he had with Township officials, he believed "[he] still owned the property," and had time to redeem it, "which [was] why [he] kept making payments to the Township" between November 2015 and May 2017. As further evidence that he believed "[he] still owned the property[,]" DeLeon pointed to an August 24, 2016 violation notice he received from the Township, as a result of which he "incur[red] much expense in cleaning up the property." According to DeLeon, if he had known about the March 11, 2016 final judgment, he would not have "go[ne] through the time and expense of cleaning up the property[.]"

Referring to the letters Fischer sent to the Township and plaintiff's former attorney, DeLeon claimed he thought Fischer "was taking care of the matter and protecting [his] interests." DeLeon conceded, however, that when "Wells kept telling . . . Fisher and me that she had receipts for the payments of the taxes" but "never supplied any receipts" when requested, it led him to "believe [that] she just . . . took the money [he] was providing her." Nonetheless, DeLeon claimed he did not learn of the final judgment until he retained his current counsel. DeLeon explained that because the property was "mortgage free," he would never have "allow[ed]" the property to be lost for $3815.13 when "the property [was] currently estimated to have a value of $206,039 according to a Zillow Zestimate" he attached. However, he admitted he "bec[a]me aware of the [t]ax [s]ale . . . about August 15, 2015[,]" when "[he] learned that there was $23,000 in property taxes owed" but the Township refused to accept a partial payment of $15,000. He also noted that "[d]uring December 2014 to January 2015[,]" he "was diagnosed with bladder cancer[,]" was "undergo[ing] both radiation and chemotherapy treatment[,]" and believed to "have also suffered from a mini stroke," which prevented him from "focus[ing] on one thing."

Plaintiff opposed defendant's motion. As proof that DeLeon was aware of the tax sale and the subsequent foreclosure proceedings, plaintiff provided

the affidavit of service for the summons and complaint, as well as certifications of service for the order setting the time, place, and amount of redemption, motion to substitute, motion for final judgment, and final judgment of foreclosure. Additionally, plaintiff submitted a certification by its realtor, Danielle Arena, averring that she visited the property on December 9, 2016, to take photographs for plaintiff. Arena certified that when she explained the purpose of her visit to DeLeon, "[he] acknowledged that he was well aware of the foreclosure proceedings" but "did not have [the] requisite funds." Plaintiff also submitted a certification by its property manager, Gregory Jacovini, averring that after receiving an appraisal of the property from Patriot Mortgage, prepared at DeLeon's request, plaintiff offered to sell the property back to DeLeon at the appraised value of $140,000. However, it appeared "DeLeon was either unable to obtain the funds to buy back the [p]roperty or was not interested in pursuing the purchase since [p]laintiff never received a response to its December 30, 201[6] offer."

In a reply certification, DeLeon certified that he had been "saving money to try and catch up" and had saved $27,000, "for the redemption of [the] property[,]" which he had "deposited into [his] attorney's trust account." Additionally, defendant stated he had an additional $9000 available on several

credit cards and could pay any remaining balance within ten days of the court vacating the judgment.

During oral argument conducted on September 15, 2017, defense counsel argued that "it would be inequitable" to not allow defendant "to redeem the property," in light of the fact that there was substantial "equity" in the property as it was "unencumbered by a mortgage." Further, defense counsel confirmed that DeLeon had deposited $27,000 into her attorney trust account as a gesture of "good faith," and that if the court vacated the judgment, he would be able to produce the entire redemption amount of "[$]38,000" within ten days of the court's order. After acknowledging that the redemption period expired seventeen months prior, the court adjourned the matter for the parties to discuss a possible settlement.

When the parties failed to reach a settlement, on October 12, 2017, the court issued an oral decision from the bench, denying defendant's motion. According to the court, based on the "evidence that . . . [p]laintiff served . . . [d]efendant with all the pleadings and notices as set forth in the [Rule,]" it was clear to the court that "service was properly made on . . . [d]efendant throughout the litigation." Thus, the court concluded that defendant "failed to rebut the prima facie presumption of the validity of service by clear and convincing

evidence[,]" and "the entry of final judgment [was] not void pursuant to [Rule] 4:50-1(d)."

In specifically rejecting defendant's challenge to the affidavit of service, the court explained that "[t]he filing of an affidavit of service . . . raise[d] a presumption [that] the facts recited therein [were] true." The court determined that "DeLeon, the sole managing member and authorized agent of . . . [d]efendant, was personally served at the property on December 15[], 2013[,]" because DeLeon "identified himself to the [p]rocess [s]erver as the authorized agent." Otherwise, "the [p]rocess [s]erver would not have known his identity if he had not identified himself by name."

Further, the court determined defendant's receipt of notice of "the final judgment" was "evidenced by the corresponden[ce] . . . [p]laintiff received" from DeLeon's then attorney. According to the court, "within two weeks" of the entry of final judgment, DeLeon's then attorney "acknowledged receipt . . . and started requesting a buy-back agreement for the subject property[.]" Additionally, "[o]n two occasions[] in December 2016, there was contact" between plaintiff's representatives and DeLeon during which DeLeon "admitted to his inability to redeem the tax [lien] and attempted to obtain a loan for the buy-back of the property." Further, because DeLeon "conceded [in his

certification] that he did not have the monies to redeem the tax lien[,]" it was "clear to the [c]ourt that he knew about the foreclosure proceedings well before the entry of final judgment."

The court also determined that defendant "should not [be] allow[ed] . . . to redeem . . . because it [was] more than [seventeen] months after the [p]laintiff's final judgment." The court concluded defendant "[had] been afforded sufficient time to redeem the tax lien" from the purchase of the tax certificate "six years ago[,]" the "filing of the foreclosure complaint" four years ago, and the "entry of final judgment" over seventeen months ago. The court was satisfied that "[d]efendant did not act in [a] timely fashion" and failed to "[satisfy] his burden of demonstrating a basis to vacate [t]he final judgment" under Rule 4:50-1. The court entered a memorializing order on October 13, 2017, and this appeal followed.[4]

On appeal, defendant argues the court erred by finding its motion was time-barred, by failing to vacate the default judgment on the ground that it was

---

[4] Defendant filed three motions to stay removal pending appeal in the trial court, the first of which was granted, and one motion for a stay of the sheriff's sale pending appeal before this court. In denying defendant's motion to stay the sheriff's sale, we granted defendant a temporary stay of removal until March 1, 2018, "as a matter of equity," but warned that "[n]o future stays [would] be granted."

void due to defective personal service pursuant to Rule 4:50-1(d), and by failing to address its argument that the final judgment should be vacated due to extraordinary circumstances pursuant to Rule 4:50-1(f). We disagree.

We review a trial court's decision to deny a motion to vacate a default judgment under Rule 4:50-1 for abuse of discretion. Deutsche Bank Nat'l Tr. Co. v. Russo, 429 N.J. Super. 91, 98 (App. Div. 2012). As such, we will not reverse the trial court's decision unless it is "'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)). Indeed, "[t]he trial court's determination under [Rule 4:50-1] warrants substantial deference," and the abuse of discretion must be "clear" to warrant reversal. Ibid.

Although N.J.S.A. 54:5-87 imposes a three-month limit to reopen a tax foreclosure judgment, we have held that Rule 4:50-1(a), (b), or (c) "allow[s] a period of one year to bring the motion." M & D Assocs. v. Mandara, 366 N.J. Super. 341, 351 (App. Div. 2004). "Otherwise, the motion to vacate [under Rule 4:50-1(d), (e), or (f)] must be brought within a reasonable time." Ibid.; see also R. 4:50-2. Here, defendant relies on Rule 4:50-1(d) and (f), which "motion shall

A-1415-17T2

be made within a reasonable time[.]" R. 4:50-2. In some circumstances, a reasonable time "may be less than one year from entry of the order in question." Orner v. Liu, 419 N.J. Super. 431, 437 (App. Div. 2011).

Rule 4:50-1(d) allows the court to relieve a party from a final judgment if it is void. "A default judgment will be considered void when a substantial deviation from service of process rules has occurred, casting reasonable doubt on proper notice." Jameson v. Great Atl. & Pac. Tea Co., 363 N.J. Super. 419, 425 (App. Div. 2003) (citing Sobel v. Long Island Entm't Prod., Inc., 329 N.J. Super. 285, 293-94 (App. Div. 2000)). Rule 4:4-4(a)(6) provides that the primary method of obtaining in personam jurisdiction over a corporation in this State is to personally serve a copy of the summons and complaint "on any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation[.]"

After executing service, a party must promptly file proof of service with the court. R. 4:4-7. That affidavit of service establishes a presumption that the facts in the affidavit are true. Resolution Tr. Corp. v. Associated Gulf Contractors, Inc., 263 N.J. Super. 332, 343 (App. Div. 1993). "While the presumption that these facts are true is a rebuttable one, 'it can be rebutted only

by clear and convincing evidence that the return is false.'" Id. at 344 (quoting Garley v. Waddington, 177 N.J. Super. 173, 180-81 (App. Div. 1981)). Where a litigant has been afforded due process, "technical violations of the rule concerning service of process do not defeat the court's jurisdiction[,]" or "render[] the judgment upon which the action is brought void and unenforceable." Citibank, N.A. v. Russo, 334 N.J. Super. 346, 352 (App. Div. 2000) (quoting Rosa v. Araujo, 260 N.J. Super. 458, 462-63 (App. Div. 1992)); see also Tatham v. Tatham, 429 N.J. Super. 502, 519 (App. Div. 2013).

Rule 4:50-1(f) is a catch-all provision that authorizes a court to relieve a party from a judgment or order for "any other reason justifying relief from the operation of the judgment or order." However, such relief "is available only when 'truly exceptional circumstances are present.'" Guillaume, 209 N.J. at 484 (quoting Hous. Auth. of Morristown v. Little, 135 N.J. 274, 286 (1994)). "In such 'exceptional circumstances,' Rule 4:50-1(f) is 'as expansive as the need to achieve equity and justice.'" Ibid. (quoting Court Inv. Co. v. Perillo, 48 N.J. 334, 341 (1966)). But "[t]he rule is limited to 'situations in which, were it not applied, a grave injustice would occur.'" Ibid. (quoting Little, 135 N.J. at 289). "Regardless of the basis, vacation of a judgment under Rule 4:50-1 should be granted sparingly." In re Guardianship of J.N.H., 172 N.J. 440, 473-74 (2002).

14

Here, we are satisfied that the court did not abuse its discretion in denying defendant's motion.  We agree with the court that defendant's seventeen-month delay in filing its motion to vacate was unreasonable, in light of the fact that DeLeon admitted being aware of the tax sale on August 15, 2015, when the Township refused to accept a partial payment, and was clearly aware of the final judgment within two weeks of its entry on March 11, 2016, when his attorney acknowledged receipt.  Nonetheless, he failed to act until August 29, 2017, over seventeen months later.

The motion also fails on the merits.  As the court determined, the entry of final judgment was not void under Rule 4:50-1(d) because defendant failed to rebut the prima facie presumption of the validity of service of the summons and complaint by clear and convincing evidence, and otherwise failed to establish that he was not properly served throughout the litigation.  Further, contrary to defendant's contention, the court determined that defendant failed to establish a basis to vacate the final judgment under Rule 4:50-1, which included the "exceptional circumstances" required under Rule 4:50-1(f).  "[T]he express policy of the [Tax Sale Law] is that it be liberally constructed so as to bar the right of redemption, not preserve it, the goal being that marketable titles to property be secured."  Malone v. Midlantic Bank, N.A., 334 N.J. Super. 238,

15

250 (Ch. Div. 1999), aff'd o.b., 334 N.J. Super. 236 (App. Div. 2000) (citing N.J.S.A. 54:5-85).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1415-17T2