**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2549-22

POPPY HOLDINGS, LLC,
and TRYSTONE CAPITAL
ASSETS, LLC,

      Plaintiffs-Respondents,

v.

RUSLAN MILOV and
LYUDMILA MILOV,[1]

      Defendants-Appellants,

and

DIVISION OF CODES AND
STANDARDS,

      Defendant.

_____

341 CONNECTICUT, LLC
and ITTA JACOBS,

      Intervenors-Respondents.

_____

---

[1] Improperly pled as Linda Milov.

Argued September 10, 2024 – Decided October 2, 2024

Before Judges Perez Friscia and Bergman.

On appeal from the Superior Court of New Jersey, Chancery Division, Passaic County, Docket No. F-004127-21.

Lisa C. Krenkel argued the cause for appellants (Krenkel & Krenkel, LLC, attorneys; Lisa C. Krenkel, on the briefs).

Anthony L. Velasquez argued the cause for respondents Poppy Holdings, LLC, and Trystone Capital Assets, LLC (Tryko Partners, attorneys; Anthony L. Velasquez, on the brief).

Patrick O. Lacsina argued the cause for respondents 341 Connecticut, LLC, and ITTA Jacobs (Patrick O. Lacsina Law Offices, LLC, attorneys; Patrick O. Lacsina, on the brief).

PER CURIAM

In this tax sale foreclosure matter, defendants Ruslan Milov and Lyudmila Milov[2] appeal from the April 27, 2023 Chancery Division order denying their motion to vacate final judgment by default entered in favor of plaintiff Poppy Holdings, LLC. Based on our review of the record, we conclude the trial court

---

[2] For clarity, intending no disrespect, we refer to Ruslan Milov and Lyudmila Milov by their first names.

correctly determined service of process of the tax sale foreclosure complaint was valid. We affirm.

I.

We summarize the pertinent facts from the testimony adduced at the two-day hearing. In 1998, Ruslan purchased a commercial, four-family rental property in Passaic. At the time of the purchase, defendants were married. In 2018, Ruslan failed to pay $2,771.94 in property taxes. Trystone Capital Assets, LLC purchased the tax sale certificate for the property.

In accordance with the Fair Foreclosure Act, N.J.S.A. 2A:50-53 to -82, Trystone served defendants a notice of intention to foreclose, dated June 30, 2021, by regular and certified mail at their home address. The certified mail was unclaimed, but the regular mailed notice was not returned. On August 9, Trystone filed a tax sale foreclosure complaint naming Ruslan and "Mrs. Milov, spouse of Ruslan Milov" as defendants. Trystone certified defendants were personally served the summons and complaint on August 23.

Process server William Sanchez provided Trystone two affidavits of service, dated August 23, 2021, reflecting he effectuated personal service on defendants. The affidavit of service for "Mrs. Milov" indicated service was perfected by delivering a copy to "Mrs. Linda Milov" and notarized with the

3

date of August 23. The affidavit of service for Ruslan indicated service was perfected by delivering a copy to his "wife," "Mrs. Linda Milov, spouse of Ruslan Milov," and notarized with an earlier date of June 23.

At the hearing, Sanchez testified that at the time of service, Esquire Process Service employed him, and he used a mobile application software called ServeManager. After effectuating service, Sanchez routinely entered the information he learned into the ServeManager application, which generated a report. Here, Sanchez's report detailed the date and time of service was August 23, at 9:25 a.m. Further, it indicated the service recipient as "Mrs. Linda Milov, spouse of Ruslan Milov." Sanchez's report describes the person served as: over forty-five years of age, caucasian, female, brown hair, over 135 pounds, and 5'6". The report additionally specified the person served had glasses and described a "[v]ehicle bearing N[ew] J[ersey] [r]egistration ZHY[***]" was observed at the location of service. The "[s]ervice [a]ddress" listed was defendants' home address. The ServeManager report had a timestamp of August 28, 2031, which was ten years and five days later than Sanchez's entered date of service.

On August 23, 2021, Trystone moved to amend the complaint, correcting defendant "Mrs. Milov, spouse of Ruslan Milov" to "Linda Milov," which the

4                                                                    A-2549-22

court granted. On October 1, Trystone moved to enter default and for an order setting the time, place, and amount of redemption. On October 15, the court ordered the redemption amount of $20,695.64, the place of redemption as the office of the Tax Collector of the City of Passaic, and the date of redemption as December 14.

On November 15, Trystone assigned the tax sale certificate to its affiliate, Poppy. The same day, Trystone moved to substitute the named captioned plaintiff, which the court granted. Approximately two months later, Poppy moved for the entry of a final judgment. On February 3, 2022, the court granted the motion vesting Poppy with the property in "fee simple." On February 7, plaintiff served the final judgment on defendants by certified and regular mail. In March, 341 Connecticut, LLC purchased the property from Poppy for $375,000 receiving a quitclaim deed, which was recorded. Trystone and its successor Poppy certified that each motion and order was served on defendants via regular and certified mail.

On March 24, defendants filed an emergent order to show cause to vacate the final judgment by default. The matter was converted to a motion to vacate final judgment, under Rule 4:50-1, "for lack of service and for any other relief the [c]ourt deems equitable." In support of the motion, Ruslan certified his "wife

5

is named Lyudmila Milov and is not named or known as Linda." Lyudmila certified that "neither [she] nor [her] husband were home at the time the [s]ummons and [c]omplaint were purportedly personally served on the non-existent Linda Milov." On April 27, 341 Connecticut moved to intervene as the new property owner seeking post-judgment discovery. The court granted 341 Connecticut's motion in part, permitting the filing of an opposition to defendants' motion. The court thereafter ordered a hearing regarding service. In March 2023, defendants' counsel asserted she held the funds to redeem the tax certificate in her trust account.

At the hearing, on March 29, defendants argued plaintiff's failure to perfect service mandated vacating the final judgment; thus, the court lacked jurisdiction to hear the tax sale foreclosure. Defendants contended service was invalid because: they were not personally served at their residence; the affidavit of service for Lyudmila was dated August 23, 2021, but notarized two months earlier on June 23; the relationship between plaintiff and Esquire created a conflict of interest; Sanchez had a conflict of interest; and 341 Connecticut was not a bona fide purchaser.

Lyudmila testified that on August 23, 2021, at 8:45 a.m., she left the residence with her family for a vacation and was not personally served with the

6

complaints. She asserted that after leaving home, they stopped at a family member's house and a coffee shop. Further, she testified they arrived in Virginia at around 5:14 p.m. on August 23. She produced time-stamped photos verifying her travels and a parking ticket for their vehicle with the license plate ZHY***.

Ruslan corroborated Lyudmila's testimony regarding the family's departure on the morning of August 23. He testified they traveled from their home to the East Orange toll plaza approximately 9.1 miles away, and that it took "anywhere from sixteen to twenty minutes" to get there. Relying on an E-ZPass record, Ruslan testified they passed through the East Orange toll plaza at 9:36 a.m. He maintained unawareness of the foreclosure until February 22, 2022, when he received an email from the Passaic County Tax Collector in response to his request to redeem the property. Ruslan testified he had contemporaneously received communications from 341 Connecticut's representative seeking to purchase the property for approximately $650,000, but the tax foreclosure was never mentioned.

Defendants' qualified GPS expert David Allen Burgess testified the timestamp on the ServeManager report "correspond[ed] to the date of August 28[], 2031" under the GPS timeline. Burgess clarified, however, "what that is is a Unix timestamp and not a GPS timestamp." Burgess testified that if the

ServeManager report "[wa]s interpreted as a Unix timestamp," as it likely should have been, then "the time matches exactly the time, 9:25 a.m., given on the affidavit on that day," August 23, 2021. The expert explained the timestamp could not be altered. Therefore, he acknowledged the timestamp corresponded to August 23, 2021—the date of the alleged service—under the Unix timeline. He further testified the ServeManager report GPS location placed Sanchez at a school "about 500 yards from the address given on the affidavit." Specifically, the GPS location was a "line distance of 1,544 feet" from defendants' address. The expert also agreed the GPS "information provided by ServeManager [wa]s accurate and, importantly, was not altered."

He opined that based on the service time of 9:25 a.m., it was unlikely Sanchez could "have covered" the distance between defendants' residence and the GPS location if there was only thirty seconds between the service of process and completion of the ServeManager application. After verifying the E-ZPass toll timestamp and timestamps of defendants' photos taken along their route, Burgess concluded "it [was] very unlikely that [defendants] were at" their residence at the time service was purportedly effectuated.

Sanchez testified he had been a process server for approximately twenty years conducting "thousands" of services. He acknowledged having no

A-2549-22

"independent recollection of this service," but relayed he always entered the information learned at the time of service into the ServeManager application. Further, he did not always open and complete the application at the site of service. Specifically, Sanchez relayed that after service, he would sometimes "drive away, go around the corner and . . . input information."

At the conclusion of the hearing, the court issued an order accompanied by an oral decision denying defendants' motion to vacate final judgment. The court found Sanchez's testimony credible. Relying on the affidavits of service and ServeManager report, the court found "service of process was effected," stating:

> It's clear that the process server was there. He spoke to somebody and believed that somebody indicated her name was Linda Milov, and that's what he wrote, and the GPS coordinates proof. There's an expert who says you can't—the only thing on that form that can't be tampered with is the GPS coordinates. He was there.
>
> . . . .
>
> . . . Was there enough time for them to get to . . . the toll plaza? I think there [wa]s.

On appeal, defendants argue the court erred because: the affidavits of service were defective; a presumption of validity was afforded to the affidavits of service improperly shifting the burden to defendants to prove defective

A-2549-22

service by clear and convincing evidence; the notary had insufficient contact with the process server; a conflict existed, and the process server was not independent; and a bona fide purchase by 341 Connecticut did not occur. In a supplemental letter brief dated December 11, 2023, defendants further contend because there was "substantial equity" in the property pipeline, retroactivity of the United States Supreme Court's decision in Tyler v. Hennepin County, 598 U.S. 631 (2023) should be afforded. 257-261 20th Ave. Realty, LLC v. Roberto, 477 N.J. Super. 339, 366 (App. Div. 2023), certif. granted, 256 N.J. 535 (2024).

## II.

We review a motion to vacate final judgment under Rule 4:50-1 for an abuse of discretion. Roberto, 477 N.J. Super. at 366; see also BV001 REO Blocker, LLC v. 53 W. Somerset St. Props., LLC, 467 N.J. Super. 117, 124 (App Div. 2021). "An abuse of discretion occurs when a decision was 'made without a rational explanation, inexplic[ably] departed from established policies, or rested on an impermissible basis.'" Roberto, 477 N.J. Super. at 367 (quoting Savage v. Township of Neptune, 472 N.J. Super. 291, 313 (App. Div. 2022), aff'd in part, rev'd in part, 257 N.J. 204 (2024)). "When examining a trial court's exercise of discretionary authority, we reverse only when the exercise of discretion was 'manifestly unjust' under the circumstances." Newark Morning

Ledger Co. v. N.J. Sports & Exposition Auth., 423 N.J. Super. 140, 174 (App. Div. 2011) (quoting Union Cnty. Improvement Auth. v. Artaki, LLC, 392 N.J. Super. 141, 149 (App. Div. 2007)).

"Rule 4:50-1 provides for relief from a judgment [or order] in six enumerated circumstances." D.M.C. v. K.H.G., 471 N.J. Super. 10, 26 (App. Div. 2022) (quoting In re Est. of Schifftner, 385 N.J. Super. 37, 41 (App. Div. 2006)). "[T]he rule is a carefully crafted vehicle intended to underscore the need for repose while achieving a just result." Ibid. (quoting DEG, LLC v. Township of Fairfield, 198 N.J. 242, 261 (2009)).

Rule 4:50-1 provides:

> On motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under [Rule] 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.

11

We similarly "review a 'trial court's determinations, premised on the testimony of witnesses and written evidence at a bench trial, in accordance with a deferential standard.'" Nelson v. Elizabeth Bd. of Educ., 466 N.J. Super. 325, 336 (App. Div. 2021) (quoting D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013)). "[W]e defer to the trial court's credibility determinations, because it 'hears the case, sees and observes the witnesses, and hears them testify, affording it a better perspective than a reviewing court in evaluating the veracity of a witness.'" City Council of Orange Twp. v. Edwards, 455 N.J. Super. 261, 272 (App. Div. 2018) (quoting Gnall v. Gnall, 222 N.J. 414, 428 (2015)) (internal quotation marks omitted). We will "'not disturb the factual findings and legal conclusions of the trial judge' unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Griepenburg v. Township of Ocean, 220 N.J. 239, 254 (2015) (quoting Rova Farms Resort v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

"The primary method of obtaining in personam jurisdiction over a defendant in this State is by causing the summons and complaint to be personally served within this State pursuant to [Rule] 4:4-3." U.S. Bank Nat'l Ass'n v. Curcio, 444 N.J. Super. 94, 105 (App. Div. 2016) (quoting R. 4:4-4(a)). Rule

12

4:4-3(a) requires a summons and complaint "be served . . . by the sheriff, or by a person specially appointed by the court for that purpose, or by plaintiff's attorney or the attorney's agent, or by any other competent adult not having a direct interest in the litigation." The person serving the complaint and summons must submit proof of service in the form of an affidavit. R. 4:4-7. The return of service creates a "presumption that the facts recited therein are true." Jameson v. Great Atl. & Pac. Tea Co., 363 N.J. Super. 419, 426 (App. Div. 2003) (quoting Resol. Tr. Corp. v. Associated Gulf Contractors, Inc., 263 N.J. Super. 332, 343 (App. Div. 1993)). This presumption may only be rebutted by clear and convincing evidence establishing the return is false. Ibid.

A tax sale foreclosure judgment is typically void where service of process on the property owner was defective. See M & D Assocs. v. Mandara, 366 N.J. Super. 341, 352-53 (App. Div. 2004). "If defective service renders the judgment void, a meritorious defense is not required to vacate the judgment under [Rule] 4:50-1(d)." Jameson, 363 N.J. Super. at 425. Further, "[w]here due process has been afforded [to] a litigant, technical violations of the rule concerning service of process do not defeat the court's jurisdiction." Rosa v. Araujo, 260 N.J. Super. 458, 463 (App. Div. 1992) (citing O'Connor v. Altus, 67 N.J. 106, 127-28 (1975)). "Thus, 'not every defect in the manner in which process is served

renders the judgment upon which the action is brought void and unenforceable.'"

Citibank, N.A. v. Russo, 334 N.J. Super. 346, 352 (App. Div. 2000) (quoting Rosa, 260 N.J. Super. at 462-63).

III.

We address together defendants' contentions that the affidavits of service should not have been afforded the presumption of validity and that the burden of rebutting the presumption by clear and convincing evidence did not apply. Rule 4:4-3 was amended in 2000 to permit service by private process servers who do not have an interest in the litigation. See Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 4:4-3 (2024). The presumption of validity applicable to a sheriff's return was afforded to affidavits of service submitted "by a person other than a sheriff or a court appointee" authorized to serve process under Rule 4:4-3. See R. 4:4-7. Here, the court correctly found the presumption of validity applied to Sanchez's affidavits of service and held an evidentiary hearing to address the material issues of fact regarding service. See Intek Auto Leasing, Inc. v. Zetes Microtech Corp., 268 N.J. Super. 426, 433 (App. Div. 1993) (holding an evidentiary hearing was required to determine the authenticity of an affidavit of service). In seeking to vacate final judgment by default, defendants had the burden of producing clear and convincing evidence that the

affidavits of service were false. See Jameson, 363 N.J. Super. at 426; see also Garley v. Waddington, 177 N.J. Super. 173, 180 (App. Div. 1981) (stating a defendant's burden was to establish "evidence that the return [wa]s false").

Rule 4:50-1(d) permits a court to relieve a party from a final judgment if "the judgment or order is void." See also N.J.S.A. 54:5-87 (permitting a court to vacate a tax sale foreclosure after the strict three-month time limitation "only upon the grounds of lack of jurisdiction or fraud"). The Rule is "designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case." US Bank Ass'n v. Guillaume, 209 N.J. 449, 467 (2012) (quoting Mancini v. EDS ex rel. N.J. Auto. Full Ins. Underwriting Ass'n, 132 N.J. 330, 334 (1993)).

Defendants next contend service was invalid because it was conducted "by an in-house [p]rocess [s]ervice [c]ompany that has an interest in the litigation." We are unpersuaded. While Esquire maintained an office in the same location as plaintiff, the record demonstrates they are separate and distinct entities. Notably, defendants failed to produce evidence refuting Esquire had different ownership. The businesses' location in the same office alone does not establish an interest in the litigation. Sanchez's uncontroverted testimony was that he was

an Esquire employee. Further, defendants failed to demonstrate proof of a conflict.

We also reject defendants' argument that Sanchez's affidavits were defective and "facially invalid." Having concluded defendants did not demonstrate Esquire had a personal interest in the action, we also observe Sanchez's independence as a process server was unrefuted. Sanchez signed the affidavits of service, and the affidavits were dated August 23, 2021. Although the notary incorrectly dated one affidavit as June 23, we have recognized not every defect in "service will . . . constitute per se grounds to vacate a final judgment." See MTAG v. Tao Invs., LLC, 476 N.J. Super. 324, 339 (App. Div. 2023). Sanchez had worked as a process server for over nineteen years and was employed by Esquire for almost two years. He testified to following a routine when effectuating service. Sanchez would drive his vehicle to the service address, exit near the location, perfect service, walk back to enter his vehicle, and then complete inputting information into the electronic ServeManager application at the location or in the vicinity. Notably, before effectuating service, Sanchez would not receive a "description" of the person to be served and would not know if they would "be home, or what car they dr[o]ve." He

testified he never "assume[d]" information and only entered into ServeManager descriptive details learned from the person served.

Sanchez's ServeManager report detailed: an accurate description of Lyudmila; the person served provided a similar name of "Linda"; the person served self-identified herself as Ruslan's spouse; and defendants' correct vehicle license plate. The vehicle defendants undisputedly drove on vacation had the same license plate number Sanchez entered into the ServeManager application on August 23. Further, the GPS data coordinates placed Sanchez in the vicinity of defendants' home. The record supports the notarization date defect did not rebut service on defendants. Based on the totality of evidence in the record, we discern no error in the court's finding that defendants failed to demonstrate the affidavits were defective.

Defendants next posit they sufficiently rebutted the presumption of validity "by clear and convincing evidence that they were not served." We disagree. Sanchez explained different circumstances existed for each service of process location. He testified that generally the service information was entered in "under five minutes," but acknowledged "[i]t could be a few seconds" to "a few minutes." This testimony was unrebutted. The ServeManager report, which defendants moved into evidence without objection, reported a 9:25 a.m.

17

timestamp and Sanchez's GPS location near defendants' home. Specifically, the GPS data corroborated Sanchez's location approximately a quarter of a mile away from defendants' home when the application was completed, and the Unix timestamp confirmed the date of service. Burgess's testimony failed to refute service and, in fact, confirmed Sanchez's location near defendants' home and that defendants were in the vicinity at the East Orange toll plaza shortly after the time of service.

The court found it credible that after perfecting service, Sanchez would sometimes walk back to his vehicle and drive away before entering the information learned during the process into the ServeManager application. Here, multiple pieces of information were entered into ServeManager thus aligning with Sanchez's testimony that only after effectuating service would he complete the application and send the service confirmation. Therefore, the timestamp was only generated after completion and submission of the application and not generated at the exact time of process.

The record amply supports the court's finding that defendants failed to refute Sanchez effectuated service. The court soundly determined sufficient time existed between service upon Lyudmila, the completion of the ServeManager data at 9:25 a.m., and defendants' arrival at the toll plaza 9.1

18

miles from their home at 9:36 a.m. Defendants' contention that the timestamps proved service was "impossible" is unsupported. We discern no abuse of discretion by the court's determination that in this "forfeiture of . . . real property," there was sufficient "adherence to procedural requirements" of service. See MTAG, 476 N.J. Super. at 340.

Defendants next argue the affidavits of service are invalid because Sanchez "never had contact with the notary who notarized the [a]ffidavit." We observe that in response to the COVID-19 pandemic, the Legislature enacted an emergency act to temporarily provide for the remote notarization of documents. L. 2020, c. 26 (codified at N.J.S.A. 52:7-10.10). The statute permitted a notarial officer "in this State to . . . perform notarial acts using communication technology for a remotely located individual." Id. at 2. A notarial act could be performed if the identity of the remote individual was verified; the notary was able to "reasonably . . . confirm that a record . . . is the same record in which the remotely located individual made a statement or on which the remotely located individual executed a signature," and the notary "create[d] an audio-visual recording of the performance of the notarial act." Ibid. The Legislature provided that the identification of a remote individual was sufficient if the notarial officer had: "personal knowledge of the identity of the individual" or

obtained "satisfactory evidence of the identity of the remotely located individual by using at least two different types of identity proofing." Ibid.

Here, the same licensed notary notarized both affidavits of service. Defendants did not call the notary to testify regarding the affidavits of service. We note "[i]n foreclosure matters, equity must be applied to plaintiffs as well as defendants." Deutsche Bank Tr. Co. Ams. v. Angeles, 428 N.J. Super. 315, 320 (App. Div. 2012). The evidence in the record does not refute that the statutory requirements were met.

Finally, defendants argue vacating the final judgment was warranted because plaintiff committed a "fraudulent tax foreclosure" and 341 Connecticut was not a bona fide purchaser. The record does not support defendants' argument that plaintiff committed fraud warranting the final judgment to be vacated. See R. 4:50-1(c). Plaintiff properly obtained the tax certificates, timely filed the notice of intent to foreclose, served the complaint, and timely served each motion thereafter. 341 Connecticut's managing member Yehoshua Frenkel testified there was no common business interest with plaintiff or its predecessor Trystone. Frenkel's uncontroverted testimony was he learned of the tax certificate foreclosure online. He explained attempting to purchase the property directly from defendants before entry of the final judgment. See Green Knight

Cap., LLC v. Calderon, 252 N.J. 265, 271 (2022) (highlighting investors have the right to purchase a tax sale foreclosure property for fair market value). Frenkel knew Ike Schwab, a member of Poppy, from their Lakewood community and had purchased "two . . . to four properties [over] [ten] years" from Trystone and Poppy. These facts do not negate 341 Connecticut was a bona fide purchaser. Defendants demonstrated no evidence establishing fraud to rebut service. We have long recognized that mere unsupported statements and "uncorroborated testimony of [a] defendant alone is not sufficient" to reject the validity of the return of process. Goldfarb v. Roeger, 54 N.J. Super. 85, 90 (App. Div. 1959).

Having found as a threshold matter that vacating the final judgment was not warranted, because service of process was proper, we need not address defendants' supplemental argument seeking the application of pipeline retroactivity of the United States Supreme Court's decision in Tyler, 598 U.S. at 631, in accordance with our decision in Roberto, 477 N.J. Super. at 349. We note defendants raised before the trial court the application of equitable principles but did not fully establish their loss of property equity before the court. As we conclude the court had jurisdiction to enter final judgment against defendants, pipeline retroactivity is not afforded to defendants.

21

To the extent not addressed, defendants' remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION