**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1179-23

TOWNSHIP OF GLOUCESTER,

    Plaintiff-Respondent,

v.

HARRY'S TIRES, LLC, and
HARRY LAMPLUGH,

    Defendants-Appellants,

and

JOHN LAMPLUGH,
and LYNDA LAMPLUGH,

    Defendants.

_____

         Submitted November 18, 2025 – Decided December 2, 2025

         Before Judges Gilson and Perez Friscia.

         On appeal from the Superior Court of New Jersey, Chancery Division, Camden County, Docket No. C-000008-22.

         Wayne Powell Attorney, PC, attorney for appellants (Wayne Powell, on the brief).

Archer & Greiner, PC, attorneys for respondent (Vincent P. Sarubbi, James M. Graziano, and Gladys J. Rosario, on the brief).

PER CURIAM

Defendants Harry's Tires, LLC, and Harry Lamplugh appeal from the trial court's February 28, 2022 order granting plaintiff the Township of Gloucester final judgment by default, which included permanent injunctive relief and damages against defendants. Defendants also appeal from the September 9, 2023 order denying their motion to vacate the final judgment pursuant to Rule 4:50-1. Harry Lamplugh,[1] separately appeals from the November 2, 2023 order denying his motion for reconsideration, which was based on the newly asserted claim that the Township failed to properly serve him. Having reviewed the record, parties' arguments, and applicable law, we affirm.

## I.

We summarize the facts and procedural history from the record. On January 18, 2022, the Township filed a verified complaint and order to show cause (OTSC) against defendants.[2] The Township's OTSC requested temporary

---

[1] As named co-defendants share the same surnames, we use first names to avoid confusion. We intend no disrespect by this informality.

[2] Defendants John Lamplugh and Lynda Lamplugh are not parties to this appeal.

and permanent restraints, seeking to enjoin defendants, for safety reasons, from operating their tire business on two properties. Defendants' properties are located in the Township on Hilltop Avenue and North Black Horse Pike. In support of its OTSC, the Township submitted certifications from: a zoning officer, a "Code enforcement" inspector, a fire marshal, multiple law enforcement officers, an emergency management coordinator, and a professional engineer.

The zoning officer certified that the Township learned in 2017 that defendants were impermissibly storing "piles of tires in the outside area of [the] business[,] as well as on neighboring properties." As a result, the zoning officer sent a letter notice on February 23, 2017 requiring defendants to "remove all tires that were being stored outside on [the] property and on neighboring properties." The zoning officer explained that numerous zoning violation summonses were issued each year from 2017 through 2021. The zoning officer also submitted a photograph depicting that defendants had stacked numerous tires in a high pile, creating a safety hazard.

The Township's Code enforcement inspector certified that Harry's Tires had received "numerous municipal court fines and findings of violations of the [Township's C]ode . . . between 2017 and 2021." As a result, on August 10,

3

2021, the inspector notified defendants that the failure to "abate the continuing violation of Township Ordinance § 67A-9, prohibiting the outside storage of tires, as well as other violations of the Township Property Maintenance Code, within seven . . . days" would result in the Township removing the tires and assessing costs. Because defendants failed to abate the violations, "the Township was forced to remove [the] tires stored outside on August 18." The Township incurred removal costs of $34,043, including waste disposal fees of $17,015 from Magnus Environmental and manpower costs for the Township's employees of $17,028.

After the Township's remediation occurred, the inspector visited defendants' operation the next day and observed that they "had resumed [the] business operations of selling and changing new and used tires, and that approximately 20-25 tires had already been accumulated in just one day." He thereafter conducted multiple site inspections and determined defendants were still operating in violation of the Township's ordinances. After inspecting the Harry's Tires operation at the Hilltop Avenue property on September 2, he observed they had accumulated 200 tires "stored in plain view." The inspector's report noted he learned from the Township that Harry's Tires was "operating without a [mercantile] license in violation of the Township['s] . . . ordinance."

4

On September 14, the inspector "issued four . . . [s]ummonses to Harry's Tires for improper storage of materials, improper storage of trash and recycling cans, failure to obtain a mercantile license[,] and the storage of unregistered vehicles on the property." The inspector certified that Harry's Tires "continue[d] to illegally store tires outside on [their] property."

The Township's acting fire marshal certified that Harry's Tires received numerous "[n]otices of [v]iolations and [o]rders to [c]orrect, dated between March 15, 2019 through June 28, 2021." Further, because "Harry's Tires failed to correct the [v]iolations and pay the required fines, it accumulated a total of $16,558 in unpaid fines."

A Township law enforcement officer certified that "Harry's Tires, LLC is a New Jersey corporation engaged primarily in the sale of 'affordable used tires' for cash." He asserted that "[t]he official business address [of] Harry's Tires, LLC is . . . Hilltop Ave., . . . but it also stores used tire inventory and scrap tires at . . . N[orth] Black Horse Pike." The officer certified that drone footage showed "approximately 1,000 scrap tires lying on the ground at the N[orth] Black Horse Pike location and approximately 500 at the Hilltop Ave[] location," demonstrating the hazardous conditions. He further certified that in November 2021, "the Township Fire Department responded to a fire at" defendants' North

Black Horse Pike location because a single tire had caught fire and "spread to some scrap lumber and a tree branch before it was extinguished." The officer attached a police report stating that "stacks of several hundred new and old tires" enclosed the fire area, "making it a difficult area to access." On the date of the fire, Harry could not be reached, despite several attempts.

The Township's emergency management coordinator certified that "[a] fire from any of the Harry's Tires sites would pose a major environmental and logistical nightmare for emergency responders." He explained the "site locations for defendant Harry's Tires in the Township are in close proximity" to both State highways, the Big Timber Creek tributary, and "heavily-populated residential areas." "Both of the Harry's Tires' sites contain hundreds of easily-combustible tires haphazardly strewn around the property, making it a death trap for anyone attempting to exit the buildings on the sites in the event of a fire, as well as causing very serious hazards for emergency responders." Based on his years of experience, he opined that "[t]he illegal storage of hundreds of tires on the sites will undoubtedly cause a catastrophe."

The professional engineer certified that the Township hired his "employer, CME Associates, to conduct an environmental review of the Harry's Tires" operation at "Hilltop Avenue." He explained that an inspection of the property

A-1179-23

demonstrated that "[t]he scrap tires present a life-safety hazard to the operators and employees on the property, as well as neighbors, in the event of a fire" and that there were continuing violations. The professional engineer's report also noted the Hilltop Avenue property "is approximately 0.2037 acres" and is in a commercial residential zone.

On January 24, 2022, the trial court (first court): entered the OTSC, setting a return date for February 28; enjoined defendants from conducting any tire business operations; and required defendants to "abate the nuisance and violations of State and local laws." The first court required the Township to serve defendants with the OTSC, complaint, and supporting documents within three days. Defendants were ordered to file opposition by February 16.

On January 24, the Township personally served each defendant except Harry. Because the Township's process server could not personally serve Harry, it filed an affidavit of diligent inquiry and served him via substituted service by certified mail and regular mail in January 2022. Harry later acknowledged in a certification that a "certified mail package was signed for at [his] home" on January 27.

On February 24, the Township submitted a letter to the first court noting that defendants had failed to submit any opposition and requested it enter a

permanent injunction with the other relief "since defendants have defaulted" and "it appear[ed] that there [wa]s no need for a hearing." The Township asserted defendants were violating the OTSC and submitted certification from a Township detective who was the "Deputy Commander for the Investigations Bureau of the Gloucester Township Police Department." The detective certified that Harry's Tires was continuing "to operate its business of storing, buying[,] and selling tires" at its "two business locations." He further explained that "defendants have continued to conduct business as usual at their two business locations despite the fact that the January 24, 2022 [OTSC] enjoined them from doing so."

On February 28, the first court entered the final judgment by default, as defendants failed to file an answer, oppose the OTSC, and appear for the hearing. The first court granted the Township a permanent injunction, preventing defendants from operating their tire businesses "at the two locations" and requiring defendants to pay damages of $50,601 for the Township's remediation costs plus outstanding fines. The Township was also authorized to "remove all tires from the outside of the two business locations, padlock any doors, install concrete barriers to prevent any ingress or egress at the two locations[,] and take any other reasonable actions to prevent defendants from

operating their business." The first court's final judgment specifically precluded defendants from "operating a tire repair or replacement business or conducting any other business at the two locations for Harry's Tires." The Township thereafter remediated defendants' properties for a second time.

In June 2023, approximately sixteen months after it was entered, defendants moved to vacate the first court's final judgment pursuant to Rule 4:50-1(a), (e), and (f). Defendants acknowledged that the Township effectuated "personal service of the complaint and [OTSC] upon all parties except" Harry, who "was purportedly [served] by certified mail." Defendants maintained vacating the judgment was warranted because Harry had "retained counsel to file a response to" the Township's action but that an appearance or a responsive pleading was never filed. Further, defendants' counsel asserted Harry suffered varying hardships that prevented him from addressing the litigation.

On September 6, a second court heard defendants' motion and issued an order accompanied by an oral decision, which denied defendants' motion to vacate the final judgment. During oral argument, defendants acknowledged that they learned of the final judgment "within days of it being entered" because the Township had "provided [Harry] . . . with a copy of the order" when they "cleared out the business." Defendants maintained that they had "retained

counsel" who advised an appearance was not necessary. Defendants posited that waiting sixteen months to move to vacate the court's judgment was reasonable because Harry was "destitute," in "a state of depression," and involved in "other kinds of abusive behavior."

Defendants also argued that it should be permitted to operate the business because the Township had remediated the dangerous conditions. The second court noted defendants had failed to provide a "certification" from any defendant attesting to the claims made by defendants' counsel. Defendants next argued the final judgment prohibited their use of the properties because it precluded defendants from "conducting any other business." During argument, the second court noted the final judgment did not preclude defendants from leasing the properties or seeking approval for another use before the appropriate Township board. The second court also found that defendants offered no meritorious defense to the Township's claims. Defendants never asserted they were "in compliance" with the Township's ordinances and had the required "licenses that [they were] supposed to have."

Regarding defendants' argument under Rule 4:50-1(a), the second court determined defendants' application was untimely under Rule 4:50-2, which requires claims under subsection (a) to be filed within a year. Under subsection

(a), the second court also found defendants failed to demonstrate excusable neglect and a meritorious defense. The second court found defendants' subsection (e) argument was similarly unavailing because defendants "should [not] profit from the fact that . . . [the Township performed the] clean[ ]up." As to subsection (f), the second court determined defendants failed to satisfy their burden of demonstrating a "prima facie case of a meritorious defense" and that "a grave injustice would occur." The second court also noted that defendants had not moved in a reasonable time under subsections (e) and (f).

On September 18, 2023, Harry moved for reconsideration of the second court's denial of his motion to vacate the final judgment. After argument, on November 2, the second court issued an order accompanied by an oral decision denying his motion. Defendants' counsel acknowledged the motion was deficient because no supporting documents were timely provided in the twenty days afforded by Rule 4:49-2, but he argued the court should relax the Rule. Defendants' counsel posited that the second court should vacate the final judgment as to Harry, contending that: personal service was not effectuated, the Township failed to file a sufficient affidavit of diligent inquiry, no motion for substituted service was filed, and no proof of certified mail was in the record. He maintained the Township failed to produce a "copy of a green card . . .

11

indicating that . . . [Harry] or anyone of age at" his "address . . . signed for a certified mail." The court denied the motion, finding Harry's application was procedurally untimely. The court then considered the merits of the reconsideration motion and determined that the Township's affidavit of diligent inquiry satisfied Rule 4:4-4(b) and that no motion for substitute service was required under subsection (b).

On appeal, defendants contend the court abused its discretion in denying their motion to vacate fault judgment.[3]

II.

We review a motion to vacate final judgment under Rule 4:50-1 for an abuse of discretion. 257-261 20th Ave. Realty, LLC v. Roberto, 259 N.J. 417, 436 (2025); BV001 REO Blocker, LLC v. 53 W. Somerset St. Props., LLC, 467 N.J. Super. 117, 124 (App. Div. 2021). An abuse of discretion occurs when the trial court's decision is "made without a rational explanation, inexplicably

_____

[3] We note on appeal Harry challenges the court's order denying his motion to reconsider, which was based on his allegation that the Township ineffectively served him. Harry has failed to address the issue in his merits brief. We decline to consider issues that are not formally briefed. See In re Bloomingdale Convalescent Ctr., 233 N.J. Super. 46, 49 n.1 (App. Div. 1989) (dismissing an appeal that was not briefed); State v. D.F.W., 468 N.J. Super. 422, 447 (App. Div. 2021) (disallowing consideration of issues not formally briefed by defendant); Rule 2:6-2(6).

departed from established policies, or rested on an impermissible basis." Savage v. Township of Neptune, 472 N.J. Super. 291, 313 (App. Div. 2022), aff'd in part, rev'd in part, 257 N.J. 204 (2024) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). "When examining a trial court's exercise of discretionary authority, we reverse only when the exercise of discretion was 'manifestly unjust' under the circumstances." Newark Morning Ledger Co. v. N.J. Sports & Exposition Auth., 423 N.J. Super. 140, 174 (App. Div. 2011) (quoting Union Cnty. Improvement Auth. v. Artaki, LLC, 392 N.J. Super. 141, 149 (App. Div. 2007)).

Rule 4:50-1 is "designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case." Mancini v. EDS, 132 N.J. 330, 334 (1993) (quoting Baumann v. Marinaro, 95 N.J. 380, 392 (1984)). "[T]he rule is a carefully crafted vehicle intended to underscore the need for repose while achieving a just result." D.M.C. v. K.H.G., 471 N.J. Super. 10, 26 (App. Div. 2022) (quoting DEG, LLC v. Township of Fairfield, 198 N.J. 242, 261 (2009)). "Rule 4:50-1 provides for relief from a judgment [or order] in six enumerated circumstances." Ibid. (quoting In re Est. of Schifftner, 385 N.J. Super. 37, 41 (App. Div. 2006)). Rule 4:50-1 provides:

A-1179-23

On motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R[ule] 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.

Equitable principles should guide the court's analysis regardless of the subsection. MTAG v. Tao Invs., LLC, 476 N.J. Super. 324, 333 (App. Div. 2023) (quoting F.B. v. A.L.G., 176 N.J. 201, 207 (2003)).

"Rule 4:50-2 provides the time frame within which a motion seeking relief under Rule 4:50-1 must be filed." Romero v. Gold Star Distrib., LLC, 468 N.J. Super. 274, 296 (App. Div. 2021). Pursuant to Rule 4:50-2, "[t]he motion shall be made within a reasonable time, and for reasons (a), (b) and (c) of R[ule] 4:50-1 not more than one year after the judgment, order or proceeding was entered or taken." Ibid. Motions under "subsections (d), (e) and (f) must be brought within a 'reasonable time,' which could be more or less than one year after the judgment,

14

depending on the circumstances." Ibid. "[A] reasonable time is determined based upon the totality of the circumstances." Ibid.

### III.

Defendants contend that reversal of the second court's denial to vacate final judgment is warranted under Rule 4:50-1(a), (e), and (f). After our review of the record, we are unpersuaded.

Defendants specifically argue under Rule 4:50-1(a) that they have demonstrated excusable neglect and urge that Rule 4:50-2's express time limitation be disregarded. Our Supreme Court has elucidated that "a defendant seeking to reopen a default judgment because of excusable neglect must show that the failure to answer was excusable under the circumstances and that a meritorious defense is available." Hous. Auth. of Morristown v. Little, 135 N.J. 274, 284 (1994). Defendants contend excusable neglect exists because Harry "hired counsel and entrusted [counsel] with protecting [their] interests." However, defendants never submitted credible evidence to establish excusable neglect. The second court never received a supporting affidavit, based on personal knowledge, that detailed either the information surrounding Harry's alleged hiring of an attorney to defend the lawsuit or that he suffered a mental health condition. See Rule 1:6-6 (stating that the court may consider "affidavits

15

made on personal knowledge, setting forth only facts which are admissible in evidence to which the affiant is competent to testify").

Defendants have also failed to proffer a credible meritorious defense, having failed to address the years during which they undisputedly refused to address the properties' violations and remediate the unsafe property conditions caused from operating the tire business. Relevantly, defendants only moved to vacate the final judgment approximately sixteen months after the Township served them with the final judgment. There is no merit in defendants' argument that an injustice exists which warrants relaxing the one-year time limitation set by Rule 4:50-2. For these reasons, we conclude the second court did not err in denying defendants' motion under Rule 4:50-1(a).

Defendants also argue, for the first time on appeal, that under Rule 4:50-1(a), the second court erred in denying the motion to vacate because it "did not require any proof of service upon the corporation." It is well-settled that appellate courts "will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem.

16

Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)).

Nevertheless, having considered defendants' contention for the sake of completeness, we conclude the argument lacks merit. The Township's counsel certified Harry's Tires was personally served as John accepted service and submitted an affidavit of service. The first court found Harry's Tires was "served via personal service on January 24, 2022," and defendant's counsel acknowledged that the Township personally served Harry's Tires. A return of service affidavit creates a "presumption that the facts recited therein are true." Jameson v. Great Atl. & Pac. Tea Co., 363 N.J. Super. 419, 426 (App. Div. 2003) (quoting Resol. Tr. Corp. v. Associated Gulf Contractors, Inc., 263 N.J. Super. 332, 343 (App. Div. 1993)). This presumption may only be rebutted by clear and convincing evidence establishing the return is false. Ibid. Defendants' failed to rebut personal service was effectuated.

Defendants next argue under Rule 4:50-1(e) that the final judgment should be vacated because the Township's remediation of the properties "was accomplished" and serves as a change in circumstances. Defendants purportedly "expected by entry of the order that [their] business would be temporarily shuttered until it was both safe and in compliance with the regulatory scheme."

17                                                                                     A-1179-23

Alternatively, defendants argue that a remand for a hearing is necessary because the final judgment provides for a total "deprivation of the right to use [the] . . . property for some other conforming commercial use in perpetuity." These arguments lack merit based on the facts and law.

Defendants have failed to establish there has been a change in circumstances warranting equitable vacatur of the final judgment. Under Rule 4:50-1(e), the court may vacate "a final judgment or order" when "the judgment . . . has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application." Our Supreme Court has stated, "In essence, the rule is rooted in changed circumstances that call the fairness of the judgment into question." DEG, 198 N.J. at 265-66. The Township's remediation of the properties was due to defendants' years of continued safety violations and is not a change of circumstances that supports vacating the final judgment.

The Township accurately asserts that defendants' inability to use the properties for the tire business "is a direct consequence of their unlawful activities and does not constitute an inequitable outcome." Further, we observe the first court's order only enjoined defendants from operating or "conducting

A-1179-23

any other <u>business at the two locations for Harry's Tires</u>." (emphasis added). Indeed, the final judgment plainly only prohibits defendants from continuing to operate the tire business. As the second court correctly recognized, defendants are not precluded from seeking to lawfully operate an authorized business on the properties permitted under the Township's zoning ordinances.

Defendants alternatively argue that exceptional circumstances exist to justify vacating the final judgment under <u>Rule</u> 4:50-1(f), which permits a catchall for relief. Subsection (f) provides relief from an order "'only when truly exceptional circumstances are present and only when the court is presented with a reason not included among any of the reasons' set forth in the other exceptions." <u>Parker v. Marcus</u>, 281 N.J. Super. 589, 593 (App. Div. 1995) (quoting <u>Baumann</u>, 95 N.J. at 395); <u>see also</u> <u>U.S. Bank Nat'l Ass'n v. Guillaume</u>, 209 N.J. 449, 484 (2012) (finding a party must demonstrate exceptional circumstances to obtain relief under <u>Rule</u> 4:50-1(f)). When considering a motion for relief under subsection (f), "a court's obligation is 'to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case.'" <u>LVNV Funding, LLC v. Deangelo</u>, 464 N.J. Super. 103, 109 (App. Div. 2020) (quoting <u>Manning Eng'g, Inc. v. Hudson Cnty. Park Comm'n</u>, 74 N.J. 113,

19

120 (1977)).  Nonetheless, "vacation of a judgment . . . should be granted sparingly."  Roberto, 259 N.J. at 436 (quoting In re Guardianship of J.N.H., 172 N.J. 440, 473-74 (2002)).

Again, defendants waited sixteen months after receiving the final judgment to file a motion to vacate.  Defendants never provided the second court with an affidavit supporting defense counsel's assertion that Harry had retained an attorney nor that he had mental health and other issues.  Our review of the record convinces us that defendants have failed to show the second court abused its discretion in declining to find exceptional circumstances entitling defendants to relief from the final judgment.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1179-23